**Jim AKIN, Appellant,**

v.

**LOUISIANA NATIONAL BANK OF BATON ROUGE et al., Appellees.**

No. 19642.

United States Court of Appeals
Fifth Circuit.

Sept. 5, 1963.

Lloyd J. Cobb, New Orleans, La., Harold B. Sanders, Dallas, Tex., Cobb & Wright, New Orleans, La., for appellant.

Ben R. Miller, Alvin B. Rubin, Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, La., for appellees.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff, Mrs. Jim Grant Akin, a citizen of Texas, brought this action in the District Court for the Eastern District of Louisiana against Louisiana National Bank of Baton Rouge, the Testamentary Executor of the Succession of Charles W. Lamar, Jr., the plaintiff's deceased adoptive father. The plaintiff also joined as defendants the testamentary heirs of the decedent, Mrs. Lamar and two minor children. The complaint prays for a judgment "ordering and decreeing that said Defendants, and each of them, recognize the rights of Plaintiff as an adopted child and heir of Charles W. Lamar, Jr., Deceased, and as such entitled to her legitime or forced portion of his Estate, being two-ninths (2/9th) thereof." Jurisdiction was invoked on the ground of diversity of citizenship. The district court declined to accept jurisdiction. We reverse and remand.

The plaintiff is the daughter of her mother's first marriage. Lamar, the decedent, adopted her as his child May 22, 1935, by a court decree in New Mexico, eight months after he and her mother were married. At the time, the plaintiff

was seven years old. Two years later the plaintiff's mother obtained a divorce from Lamar in Texas. Ancillary to the divorce, the Texas court issued a decree declaring "that the said relationship of parent and child, heretofore existing between * * * [Charles W. Lamar, Jr.] and Jim Grant Lamar be and it is hereby dissolved, terminated and held for naught, and that the name of said child is here changed by the Court so that henceforth her name is and shall be Jim Grant". The Texas court found that it had "jurisdiction both of the parties and of the subject matter brought before the court". Lamar later remarried. At the time of his death in 1960, and for many years before his death, he was domiciled in Baton Rouge, Louisiana. He left a substantial estate in trust to his widow and their two minor adopted children. The plaintiff was not named as a beneficiary in Lamar's will. The will was probated in the 19th Judicial District Court for the Parish of East Baton Rouge on June 20, 1960. Succession proceedings have not yet terminated.

On motion of the defendant, the district court dismissed the action without prejudice to the plaintiff's right to intervene in the State court succession proceedings. The district court based its decision on two grounds:

(1) "[P]robate matters are not within the jurisdiction of the federal courts * * * If successful, this, of course, would amount to an annulment of certain portions of the decedent's will. Under Louisiana law, a probated testament may be annulled only by a direct action brought in the succession proceedings."

(2) In effect the plaintiff seeks merely a declaratory judgment "that certain portions of decedent's will, as probated, are invalid and should be reduced in her favor. * * * [The Court] may decline to give declaratory relief in the exercise of its sound discretion." Here jurisdiction is declined, because "the case in-

volves difficult questions of state law affecting public policy of the state."

## I.

There are several reasons why a federal court has no jurisdiction to probate a will or to administer an estate. Historically, the equity jurisdiction conferred by the Judiciary Act of 1789, 1 Stat. 73, and Section 24 of the Judicial Code is that of the English Court of Chancery in 1789. It did not extend to probate matters. The probate of wills and the grant of letters of administration were exclusively within the jurisdiction of the ecclesiastical courts of England. Markham v. Allen, 1946, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256. In addition, some courts have said that probate matters are not "cases or controversies within the meaning of Article III of the Constitution." In re Broderick's Will, 1874, 21 Wall. 503, 517, 22 L.Ed. 599; Byers v. McAuley, 1893, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867. It has also been suggested that since the source of authority to make a will is derived from state law probate proceedings are part of the requirement to make it effective. Sutton v. English, 1918, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; O'Callaghan v. O'Brien, 1905, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101.

It is equally settled, however, that once a will has been probated, an action by a legatee, heir, or other claimant against an executor becomes a suit between the parties that is a justiciable controversy within the scope of federal jurisdiction if the other jurisdictional requirements are met. Thus, the Cyclopedia of Federal Procedure, § 2.87 (3d Ed.1951) enumerates a long list of varied actions which might seem to be "probate matters", were that term used loosely, but are causes properly subject to federal jurisdiction: "No interference with state court proceedings appearing, and the primary elements of federal jurisdiction being present, federal courts may, if they see fit, entertain proceedings involving recovery of shares or establishment of interests in an estate; recovery of a

legacy or bequest under a will that has been probated; determination of whether an alleged widow was decedent's wife; validity of alleged transfer of an interest; partition of properties; enforcement of liens and mortgages, or equities arising from settlement and distribution and elections of the parties."

Waterman v. Canal-Louisiana Bank & Trust Co., 1909, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80, which arose in Louisiana, is a leading decision on the subject. In Waterman an heir brought suit in the federal court against the decedent's executor for the determination of an asserted interest in a lapsed legacy and the consequent increase in the residuary estate. In that case, as in the case before us, the executor contended that under the law of Louisiana an action looking to settlement under a will may be brought only in the succession proceedings. The Supreme Court held that "the Federal court has jurisdiction for the purpose of ascertaining the rights of the complainant to recover as against the executor, and the interest of the persons before the court in the fund". The Supreme Court said:

"The controversy is within the equity jurisdiction of the courts of the United States as heretofore recognized in this court, and such jurisdiction cannot be limited or in anywise curtailed by state legislation as to its own courts. The complainant, it is to be noted, does not seek to set aside the probate of the will which the bill alleges was duly established and admitted to probate in the proper court of the state."

"The United States Circuit Court, by granting this relief, need not interfere with the ordinary settlement of the estate, the payment of the debts and special legacies, and the determination of the accounts of funds in the hands of the executor, but it may, and we think has the *right to determine as between the parties before the court the interest of the complainant in the alleged lapsed legacy and residuary estate,* because of the facts presented in the bill. *The decree to be granted cannot interfere with the possession of the estate in the hands of the executor, while being administered in the probate court, but it will be binding upon the executor, and may be enforced against it personally.* If the Federal court finds that the complainant is entitled to the alleged lapsed legacy and the residue of the estate, while it cannot interfere with the probate court in determining the amount of the residue arising from the settlement of the estate in the court of probate, the decree can find the amount of the residue, as determined by the administration in the probate court in the hands of the executor, to belong to the complainant, and to be held in trust for her, thus binding the executor personally * * *."

In Markham v. Allen, 1946, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256, the defendants challenged the district court's jurisdiction to hear a suit by the Alien Property Custodian against the executor and resident heirs to determine the Custodian's right to share in the decedent's estate, then in the course of probate administration in the state court. Upholding the lower court's jurisdiction, the Supreme Court pointed out:

"[I]t has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. Waterman v. Canal-Louisiana Bank [& Trust] Co., 215 U.S. 33, 43 [30 S.Ct. 10, 54 L.Ed. 80], and cases cited. See Sutton v. English, supra, [246 U.S.] [199] 205 [38 S.Ct. 254, 62 L.Ed. 664]; United States v. Bank of New York & Trust] Co., 296 U.S. 463, 477 [56

S.Ct. 343, 80 L.Ed. 331]; Commonwealth Trust Co. [of Pittsburgh] v. Bradford, 297 U.S. 613, 619 [56 S.Ct. 600, 80 L.Ed. 920]; United States v. Klein, 303 U.S. 276 [58 S.Ct. 536, 82 L.Ed. 840]; Princess Lida [of Thurn and Taxis] v. Thompson, 305 U.S. 456, 466 [59 S.Ct. 275, 83 L.Ed. 285]." 326 U.S. at 494, 66 S.Ct. at 298, 90 L.Ed. 256.

■ This Court has had several cases analogous to the instant case. In Looney v. Capital Nat'l Bank, 5 Cir., 1956, 235 F.2d 436, cert. den'd., 352 U.S. 925, 77 S.Ct. 222, 1 L.Ed.2d 161, we held that a federal district court could entertain a declaratory judgment action seeking a ruling that a testamentary trust was void as violative of the rule against perpetuities. The rule, as we stated in Looney, is that

"[W]here state courts of general jurisdiction are granted the power to determine inter partes the validity vel non of provisions of a will, a United States court in that state has jurisdiction to entertain such an action where the requisite diversity of citizenship and amount in controversy are present, and so long as it does not interfere with the administration of the estate in a state court." 235 F.2d at 438.

In Fakouri v. Cadais, 5 Cir., 1945, 147 F.2d 667, we held that an action against a legatee to have a will and the Louisiana state court's judgment of probate declared void was properly in the federal courts. We observed, "When a testament with probate becomes the subject of controversy and suit is brought to set both aside, as here, the relief sought is not a probate action but an independent suit triable in a court of ordinary jurisdiction." In Mitchell v. Nixon, 5 Cir., 1952, 200 F.2d 50, however, there was an attack upon the validity of the will itself, rather than a dispute between parties who, having accepted its existence, differ as to its effect or construction. This Court held that the contest was an extension of the probate proceeding and not a "proceeding inter partes."

The executor acknowledges, as it must, of course, that the suit is not "literally" a suit to annul a will but contends that an action "to reduce is one to set aside a will to the extent that the disposition made therein exceeds the disposable portion", quoting from Succession of Dancie, 1939, 191 La. 518, 186 So. 14, 19. The district court accepted this view, stating: "Under Louisiana law, a probated testament may be annulled only by a direct action brought in the succession proceeding. LSA-7 C.C.P. Art. 2931. This limitation on the available procedure for attacking the provisions of the will, which plaintiff's suit here necessarily does make such a procedure part of the probate proceedings in the State court, and hence, outside of the jurisdiction of this Court." Article 2931 provides:

"A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The defendants shall be cited, and the action shall be tried as an ordinary proceeding."

The executor bolsters this argument by pointing to Article 81 of the LSA–Code of Civil Procedure. This article provides:

"When a succession has been opened judicially, until rendition of the judgment of possession, the following actions shall be brought in the court in which the succession is pending: * * * (3) An action to annul the testament of the deceased; and (4) An action to assert a right to the succession of the deceased, either under his testament or by effect of law."

Even if plaintiff's action does not directly involve the actual voiding of Lamar's will, so the executor argues, it is certainly "an action to assert a right to the succession" and hence governed by Article 81. Under Articles 2931 and 81 Louisiana courts of general jurisdiction would not have power to grant the plain-

tiff relief, and a federal court could thus have no such power either.

■ This argument rests on a false premise. Federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought. As the Supreme Court put it in Waterman:

"This controversy is within the equity jurisdiction of the courts of the United States as heretofore recognized in this court, and such jurisdiction cannot be limited or in anywise curtailed by state legislation as to its own courts. The complainant, it is to be noted, does not seek to set aside the probate of the will which the bill alleges was duly established and admitted to probate in the proper court of the State." 215 U.S. at 45–46, 30 S.Ct. at 13, 54 L. Ed. 80.

Again, in Hook v. Payne, 1872, 14 Wall. 252, 20 L.Ed. 887, and in Hess v. Reynolds, 1885, 113 U.S. 73, 5 S.Ct. 377, 28 L.Ed. 927, the Court disregarded state law which clearly attempted to confine litigation of this type to state probate court.

■ In Waterman, just as in the instant case, the plaintiff sued as an heir to reduce the distributive shares going to other heirs, thereby increasing her share. The instant case is perhaps stronger than Waterman, because the rights of forced heirs exist independently of a will. In both cases, however, the recognition of the plaintiff's interest does not affect the probate of the will or the administration of the estate. We note in passing, however, that although the State cannot defeat federal jurisdiction, control over the res and the actual distribution of the succession property remains in the hands of the state court. Louisiana is sole mistress of the devolution of Louisiana property by descent.

We cannot accept the executor's interpretation of Louisiana law. The suit is simply not one to annul Lamar's will; on the contrary, the plaintiff asserts the validity of the probated will. Article 1502

of the LSA–Civil Code of Louisiana specifically stipulates that

"Any disposal of property, whether *inter vivos* or *mortis causa,* exceeding the *quantum* of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that *quantum.*"

The Louisiana Supreme Court has spelled out this distinction between annulment and reduction of the disposable portion in Roach v. Roach, 1948, 213 La. 746, 35 So. 2d 597, in language more recent and more compelling than that used in Dancie:

"In refusing to decree the last will and testament of the testatrix null and void, the lower court recognized the general principles of law as they are now established in this state, to the effect that, when a testator disposes of his entire estate to the prejudice of a forced heir, he has done nothing except to make a disposition of property mortis causa affecting the quantum he may legally dispose of to the prejudice of such forced heir, and that such a bequest does not make the will null and void but merely subjects such donation mortis causa to an action by the forced heir for the reduction thereof and for the recovery of his legitime * * *."

Nor does Article 81 prevent the hearing of this cause in the federal district court. This article relates to *venue* rather than to jurisdiction. The Louisiana Code of Civil Procedure was revised in 1960. Professor Henry G. McMahon, one of the principal Reporters of the new Code of Civil Procedure and an authority on Louisiana procedure, has pointed out that

"Probably the most significant change in theory made by the Louisiana Code of Civil Procedure is its substitution of Anglo-American concepts of jurisdiction and venue for the French concepts of competence heretofore utilized by the Louisiana Codes of Practice in 1825 and 1870." McMahon, Jurisdiction under the Louisiana Code of Civil Procedure, 35 Tulane L.Rev. 501 (1961).

The Reporter's explanatory footnote to this passage indicates that Articles 1 through 10 relate to jurisdiction, and Articles 41 through 122, which would include, of course, Article 81, to venue. The author goes on to state that this has been a change primarily in terminology, since French concept of *competence ratione materiae*, or absolute competency, has served much the same procedural purpose as the Anglo-American concept of jurisdiction over subject matter, and the concept of *competence ratione personae*, or relative competency, is related, functionally, to venue. This same explanation of the new Louisiana code has been made elsewhere, e. g., McMahon, The Louisiana Code of Civil Procedure, 21 La.L.Rev. 1, 25 F.R.D. 287 (1960); Comment, Venue, 21 La.L.Rev. 182 (1960). The "Introduction" to the annotated edition of the code states:

"The concept of jurisdiction, under the Codes of Practice of 1825 and 1870, was subdivided into 'jurisdiction ratione materiae' and 'jurisdiction ratione personae'. This classification was patterned upon the 'competence ratione materiae' and 'competence ratione personae' of French procedure. * * * These twin concepts of Louisiana procedure correspond closely with the 'jurisdiction over subject matter' and 'venue' of Anglo-American law.

" * * * [T]his Code adopts the *Anglo-American concepts of jurisdiction, jurisdiction over the subject matter, jurisdiction over the person, and venue.*" (Emphasis supplied.) LSA–Code of Civil Procedure, Vol. 2, pp. 1–2.

Article I of the LSA Code of Civil Procedure defines jurisdiction as "the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." The definition of venue, however, which Professor McMahon has described as "merely an adaptation of the traditional meaning of the term in English and American law to the geographical idiom of Louisiana,"[1] is that "[v]enue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject."[2] There is no question but that Article 81, which is placed in the chapter relating specifically to venue, is not concerned with denying to state courts of general jurisdiction "the legal power and authority" to hear such suits as encompassed in the article's provisions. If there were any doubt on this score, it is removed by Article 44, which is placed in the same chapter on venue as Article 81. It stipulates:

"An objection to the venue may not be waived prior to the institution of the action.

"The venue provided in Articles 2006, 2811, 2812, 3941, 3991, 4031, and 4541 may not be waived.

"Except as otherwise provided in this article or by other law, *any objection to the venue, including one based on any article in this Chapter, is waived by failure of the defendant to plead the declinatory exception timely as provided in Article 928.*" (Emphasis supplied.)

Of course, limitations on a court's jurisdiction, as opposed to venue, cannot be waived. Since a federal district court in a diversity action can hear a matter, even relating to an interest in a succession, which a state court of general jurisdiction cannot hear, Article 81 does not bar this suit in the federal courts. Looney v. Capital Nat'l Bank, 5 Cir., 1956, 235 F.2d 436, cert. den'd, 352 U.S. 925, 77 S.Ct. 222, 1 L.Ed.2d 161.

II.

The question still remains whether the district court properly held that the action was one for a declaratory judgment

1. McMahon, Jurisdiction Under the Louisiana Code of Civil Procedure, 35 Tulane L.Rev. 501, 503 (1961).

2. LSA Code of Civil Procedure, Art 41.

which, in its discretion, need not be heard. The executor urges that the Louisiana law on the issues involved in this lawsuit is either unsettled or nonexistent, and that the courts of Louisiana should have the opportunity of saying whether, among other things, a child adopted outside Louisiana is to be accorded more rights under that state's forced heirship statutes than the adopted would have in the state of adoption.

■■■ The fact that federal courts may have to interpret state law and that there is a lack of complete certainty as to state law on a particular issue are not in themselves sufficient reasons for a federal court to refuse to exercise its jurisdiction. As the Supreme Court stated in Markham v. Allen, 1946, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256, 260, where a similar contention was made:

> "There remains the question whether the district court having jurisdiction should, in the exercise of its discretion, have declined to entertain the suit which involves issues of state law and have remitted the petitioner to his remedy in the state probate proceedings [Citations omitted]. The mere fact that the district court, in the exercise of the jurisdiction which Congress has conferred upon it, is required to interpret state law is not in itself a sufficient reason for withholding relief to petitioner."

We do not, however, share the district court's pessimism over the uncertainty of Louisiana law on the subject of the forced heirship of a child adopted in another jurisdiction.

"Forced heirship is one of the oldest concepts of the civil law and the core around which all succession law has grown." [3] It goes back to the Roman's high sense of duty to his children, a paternal obligation eventually reflected in the establishment of the Falcidian Fourth. "In Louisiana the institution of forced heirship has never been challenged.[4] Today in Louisiana forced heirship is regarded not only as the most efficient means of protecting children but also as a socially desirable instrument to avoid excessive concentration of wealth.[5] Basic to the civilian philosophy of law and a characteristic product of the civilian revulsion against the reach of the dead hand, forced heirship, like community property, comes close to being sacred in Louisiana. A forced heir may be deprived of his legitime *only* by judicial pronouncement of unworthiness for recognized reasons or by the testator's formal exercise of the power of disinherison for the few specific "just reasons" stated in the Civil Code. Older but equally characteristic of the civil law is the favorable place adoption has enjoyed since the early days of Roman law.[6] The necessarily close relation between forced heirship and adoption and the strong policy in Louisiana favoring the two institutions is demonstrated in the Louisi-

---

3. Porter, Forced Heirs, The Legitime and Loss of the Legitime in Louisiana, 37 Tul.L.Rev. 710, 711 (1963).

4. Id. at 721.

5. See Dainow, Forced Heirship in French Law, 2 La.L.Rev. 669 (1940); Dainow, The Early Sources of Forced Heirship; Its History in Texas and Louisiana, 4 La.L.Rev. 42 (1941); Daggett, General Principles of Succession on Death in Civil Law, 11 Tul.L.Rev. 399 (1937).

6. Institutes 1.11 (Moyle, 5th Latin Ed. 1955); Jolowicz, Roman Foundations of Modern Law, 194 (1951); 2 Sherman, Roman Law in the Modern World 83 (1917).

Adoption in Louisiana has been the subject of a number of articles. See especially, Wadlington, Adoption in Louisiana, 36 Tul.L.Rev. 201 (1962); Bugea, Adoption in Louisiana—Its Past, Present, Future, I, 3 Loyola L.Rev. 1 (1945), II, 4 Loyola L. Rev. 19 (1947), III, 23 Tul.L. Rev. 38 (1948); Pugh, Juvenile Laws of Louisiana 182–267 (1957); Comment, Adoption, 1 La.L.Rev. 197 (1938); Comment, Civil Effects of Adoption on the Descent of Property by Inheritance in Louisiana, 14 Tul.L.Rev. 287 (1939); Lunn, Comment, The Rights of One Legitimated or Adopted in Another State in a Louisiana Succession, 10 La.L.Rev. 390 (1950).

ana Constitution. The Constitution of Louisiana of 1921 provides in Section 16 of Article IV:

"No law shall be passed abolishing forced heirship; provided, that children lawfully adopted shall become forced heirs to the same extent as if born to the adoptor * * *."

Thus, the Legislature itself is prohibited from denying to adopted children the rights of forced heirs, "to the same extent as if born to the adoptor." In the Succession of Gambino, 1954, 225 La. 674, 73 So.2d 800, the court, by dictum, implied that since an adopted child has been given the status of a forced heir, a legislative act purporting to defeat his rights might offend Article IV, Section 16 of the Constitution. Article 214 of the LSA Civil Code now provides in part:

"The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents, including the right of the adopted person or his lawful descendants to inherit from the adoptive parent or parents or the relatives of the latter by blood or by adoption, and the right of the adoptive parent or parents or the relatives of the latter by blood or by adoption to inherit from the person adopted or his lawful descendants, in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents."

"Through a series of constitutional and codal changes, the adopted child was gradually accorded more and more of the rights of a legitimate child of the adoptors by birth." Wadlington, Adoption in Louisiana, 36 Tul.L.Rev. 201, 223 (1962).

There is no good reason to suggest that Article 214 may be construed as inapplicable to a foreign adoptee. In Succession of Caldwell, 114 La. 195, 38 So. 140 (1905), the only Louisiana case directly bearing on the question at issue, the Lou-

isiana Supreme Court gave full faith and credit to a Massachusetts decree of adoption and sustained the trial court's determination that the adopted child was entitled to take as a forced heir. Forced heirship is not recognized in Massachusetts or, for that matter, in any of the states except Louisiana. Thus, in every instance of a foreign adoption by Louisianians the adopted child has more rights in Louisiana than she would have had in the state of her adoption. This cannot be news to the Louisiana legislature which, over the sixty years since Caldwell was decided, has enacted and amended a number of adoption statutes including a modern comprehensive Adoption Law.[7]

One other Louisiana case is pertinent. In Alexander v. Gray, La.App.1938, 181 So. 639, the claimant to Louisiana land based his claim on a purported Kansas adoption. The court did not regard the Kansas adoption as valid, but proceeded to discuss the rights claimed by the child just as if he had been adopted in Louisiana. The court indicated it would follow the rule that the right of inheritance by an adopted child is governed by the law of the place in which the succession takes place, just as if the child had been adopted in that place and not by the law under which the adoption actually took place. One writer discussing the subject even before the liberalizing 1958 amendment of Article 214, states:

"The aim of certainty in our land titles would be furthered if the right of the adoptee to inherit Louisiana immovables were to be determined solely by Louisiana law just as if the child had been adopted in Louisiana. This interest, it is believed, outweighs the problematical consideration of whether the parties to the foreign adoption contemplated such inheritance or not. The Louisiana courts will probably treat the inheritance of movables by the adoptee in

---

7. For a detailed study of Louisiana's adoption laws, including the text of each statute, see Pugh, Juvenile Laws of Louisiana, 189–267 (1957). See also Comment, Adoption, 1 La.L.Rev. 196 (1938); Note, 22 Tul.L.Rev. 513 (1948).

the same manner, although the compelling consideration of certainty of title is not present. Certainly this is the simplest way to handle the problem. If our primary consideration is benefit to the adoptee, his interests could hardly be impaired by treating him as if he had been adopted in Louisiana, inasmuch as our present adoption law gives such full rights of succession." Lunn, Comment, The Rights of One Legitimated or Adopted in Another State in a Louisiana Succession, 10 La.L.Rev. 390, 404 (1950).

Caldwell is in line with general jurisprudence on this subject. The American Law Institute states the rule, "The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law." Restatement, Conflicts § 143. This holds true where rights of inheritance or succession are concerned:

"[B]y the better view and weight of authority the rights of inheritance of the child, as an adopted child, in the property in question will be determined by the law of the state where the property is located or the decedent was domiciled, so that, if a child locally adopted had no rights of inheritance, a child adopted under the foreign law and having rights of inheritance under that law will have no rights of inheritance in local property, and if a child locally adopted had under the local law limited or restricted rights of inheritance, a child adopted under the foreign law and having under that law unlimited rights of inheritance will have no greater rights of inheritance in local property than does a locally adopted child; and, conversely, if a locally adopted child had under the local law unlimited rights of inheritance in local property, a child adopted under the foreign law and having under that law limited or restricted rights of inheritance, will be accorded the same unlimited rights of inheritance in local property as is a child locally adopted." 154 A.L.R. 1179–1180.

Finally, we cannot agree that plaintiff was simply seeking a declaration of her rights of inheritance and that this, therefore, was a declaratory judgment action, which could be properly dismissed in the discretion of the trial judge. Byers v. Byers, 5 Cir., 1958, 254 F.2d 205, is not at all in point. There the plaintiff was seeking a construction of an admittedly valid will which, under one possible chain of happenings, might allow the plaintiff to take under the will. Here the complaint specifically requests that the plaintiff be granted "judgment against said defendants ordering and decreeing that said defendants, and each of them, recognize the rights of plaintiff as an adopted child and heir of Charles W. Lamar, Jr., Deceased, and as such entitled to her legitime or forced portion of his Estate, being two ninths (⅔ths) thereof." A judgment rendered in favor of the plaintiff would, of course, be executory against the testamentary executor and, as in Waterman, would require the executor to recognize the plaintiff's right in the distribution of the estate. As the Supreme Court stated in Waterman

"It is to be presumed that the probate court will respect any adjudication which might be made in settling the rights of parties in this suit in the Federal court. It has been frequently held in this court that a judgment of a Federal court awarding property or rights, when set up in a state court, if its effect is denied, presents a claim of Federal right which may be protected in this court." 215 U.S. at 46, 30 S.Ct. at 13, 54 L.Ed. 80.

The crux of this case is the effect of the purported nullification of the New Mexico adoption. This is precisely the type of situation for which the federal court diversity jurisdiction was created and which a federal court is equipped to handle: the effect of a Texas court's nullification of a New Mexico decree of adop-

tion urged by a Texas plaintiff as a rea-son for her right to forced heirship in the estate of a Louisiana resident. In these circumstances the plaintiff has a right to choose a federal forum and it is the court's duty to take jurisdiction of the case.

The judgment of the lower court dismissing the action below is, therefore, reversed, and the case is remanded for further proceedings.