Mrs. Frania Tye LEE

v.

Ray Lee HUNT, Executor of the Estate of H. L. Hunt.

Civ. A. No. 76–0628.

United States District Court, W. D. Louisiana, Shreveport Division.

May 11, 1977.

Wallace A. Hunter and Roger M. Fritchie, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for plaintiff.

Lawrence E. Donohoe, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., Jackson, Walker, Winstead, Caltwell & Miller, Dallas, Tex., for defendant.

## MEMORANDUM RULING

STAGG, District Judge.

The administrator of the estate of a Texas decedent, who qualified in Louisiana only for the purpose of administering a relatively small amount of property here, was sued under diversity jurisdiction on a claim by a woman whom the decedent is purported to have married fifty years before. She claimed that she is entitled to be recognized as owner of one-half of the community property acquired during the existence of their putative marriage. Defendant argues that the action presents a subject matter falling outside the federal judicial power. Defendant also questions the Court's jurisdiction over his person and whether venue is proper. Moreover, he contends that, even if the Court is proper, it should abstain from deciding the dispute. Finally, he argues that the cause should be transferred to the Northern District of Texas. For reasons given below, the Court concludes that it has jurisdiction, that venue is proper and that it has a duty to proceed to adjudicate the dispute. The decision is not so easily reached as it is stated.

## THE FACTUAL SETTING

H. L. Hunt, a wealthy Texan, died in 1974, and Ray L. Hunt was named the executor of his testament. Ray Hunt qualified as executor in the Probate Court of Dallas County, Texas. He then provoked ancillary succession proceedings in Vermilion Parish, Louisiana, which is situated in the Western District of Louisiana.

Thereafter, Mrs. Frania Tye Lee brought suit against the administrator "to be recognized as a putative wife" of H. L. Hunt and

thus "to be declared owner of one-half of the community property" acquired during this relationship. She contends that H. L. Hunt, who had adopted the pseudonym "Franklin", married her in Florida in a civil marriage ceremony on November 11, 1925. She also alleges that she and "Franklin" lived together approximately nine years until she learned that "Franklin" was actually H. L. Hunt and that he was already married to Lyda Bunker Hunt. Mrs. Lee alleges that she terminated the relationship that had existed with "Franklin" in May, 1934. However, she never sought any legal declaration concerning the invalidity of the allegedly bigamous marriage.[1] Hence, she contends she was entitled to all the benefits that would have flowed from a lawful marriage.

Her suit was filed in the Middle District of Louisiana. Judge E. Gordon West found venue there improper, for neither party was domiciled there, and the claim did not arise there. Instead of terminating the action, "in the interest of justice", Judge West transferred the case to the United States District Court for the Northern District of Texas. He reserved judgment on the other grounds in support of defendant's motion for that Court. On rehearing, Judge West sustained his previous finding that venue was not properly laid in the Middle District, but modified his transfer order. He held that a matrimonial domicile was established in Shreveport some three months after the marriage, and that two children were born there. Finding that the cause of action arose in Shreveport and determining that venue did lie in the Western District of Louisiana, he transferred the case to the Shreveport Division. *Lee v. Hunt*, 415 F.Supp. 245 (M.D.La.1976).

Complete analysis of the defendant's motion requires examination of five problems:

(1) Jurisdiction over the person;
(2) Subject matter jurisdiction;
(3) Venue;
(4) Abstention; and
(5) Transfer, or *forum non conveniens.*

## JURISDICTION OVER THE PERSON

When federal jurisdiction is asserted on the basis of diversity of citizenship, jurisdiction over the defendant's person "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2nd Cir. 1963). *See also Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193 (4th Cir. 1976); *Promotion Network, Inc. v. C. DaSilva (Vinhos) S.A.R.L.*, 63 F.R.D. 435 (N.D.Ill.1974).

In this case, plaintiff sought to base the Court's jurisdiction over defendant on article 6 of the Louisiana Code of Civil Procedure, which reads in relevant part:

"Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:

"(1) The service of process on the defendant, *or on his agent for the service of process.*" (Emphasis added.)

Under Louisiana law, "No person may be confirmed as testamentary executor . . . who is: . . . (4) A nonresident of the state who has not appointed a resident agent for the service of process in all actions and proceedings with respect to the succession, and caused such appointment to be filed in the succession proceeding; . . ." La.C.C.P. art. 3097(4). For this reason de-

---

1. Shortly after plaintiff left Mr. Hunt, she threatened legal action against him to redress the damage occasioned by his use of the name "Franklin". However, the prospective suit did not materialize. On January 24, 1942, Hunt, though refusing to admit the validity of plaintiff's claim, entered into a settlement with Frania Tye, agreeing to pay her a monetary sum in consideration for her release of all claims that she was asserting against him. According to the agreement, H. L. Hunt paid Frania Tye $100,000 in cash, and gave her an interest in oil royalties from a tract of land in Rusk County, Texas. It was agreed that the oil payments would not exceed the sum of $2,000 monthly. Additionally, Hunt agreed to pay Frania Tye's attorneys the sum of $25,000 for legal services rendered to her.

fendant's appointment of an agent for service was not voluntary but was a condition precedent to his confirmation as testamentary executor in the ancillary succession proceedings in Vermilion Parish.

Defendant asserts that in consequence the required designation of this representative did not create a complete exposure to suit, but that he could be sued by service on this agent only on claims arising out of "succession matters". Characterizing plaintiff's action as lacking the requisite connexity with the succession proceedings, defendant contends that the agent lacked power to accept service. Consequently, the service on the agent was, in effect, no service, and any claimed personal jurisdiction due to his acceptance was ineffective.

Even if it be assumed, *arguendo*, that a non-resident executor's liability to suit is limited to "succession matters", the present action is such a matter. In effect, the plaintiff claims that she owns one-half of the Louisiana property acquired during her marriage. Her entire action arises out of an alleged wrong committed by the deceased. The succession representative is the proper party defendant in the action. La.C.C.P. art. 734. Jurisdiction over him as to Louisiana property, therefore, could be obtained by means of service upon his designated agent.

Nor is the Louisiana scheme for attainment of jurisdiction unconstitutional as a denial of due process. The due process implications of the extension of a state's personal jurisdiction over a non-resident defendant were settled in *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The essence of these holdings is that the nonresident defendant must have contact with the forum state sufficient to justify the conclusion that jurisdiction over him is reasonable and just according to traditional concepts of fair play and substantial justice. Whether "sufficient contact" exists cannot

be answered by application of a simple formula; rather the Court must ascertain what is reasonable and fair under the circumstances of the particular situation. *See Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481 (7th Cir. 1968). Application of this flexible test requires an examination of whether defendant engaged in any activity by which he invoked the benefits and protections of the law of the forum. *Consolidated Laboratories v. Shandon Scientific Co.*, 384 F.2d 797, 801 (7th Cir. 1967); *Promotion Network, Inc. v. C. DaSilva (Vinhos) S.A.R.L.*, 63 F.R.D. 435 (N.D.Ill.1974).

Defendant consciously invoked the protection of the laws of Louisiana. Indeed, he has sought the aid of a state court for the protection of property rights that he and others have in the estate of Mr. Hunt. The plaintiff asserts that she has rights in the self-same property, in addition to other claims against the defendant. The defendant may not now claim immunity from the adjudication of these claims in Louisiana. The exercise of personal jurisdiction over the defendant adequately accords him due process of law.

## JURISDICTION OVER THE SUBJECT MATTER

Defendant next argues that the Court lacks jurisdiction over the subject matter. He proposes that:

(A) Plaintiff is asking the Court for a declaration of status and thus the requisite jurisdictional amount is insufficient;

(B) Plaintiff did not join certain indispensable parties, preventing the Court from rendering a judgment that would terminate the controversy; and

(C) The case involves questions of domestic relations and probate, areas traditionally relegated to states for resolution.

### A. Status

Both parties have characterized the action as involving a determination of status.

Defendant's position is that a declaration of status does not involve the requisite jurisdictional amount. Plaintiff counters, arguing that the determination of status is merely a preliminary step in the resolution of claimed property rights that far exceed the minimal amounts required for jurisdictional purposes. Each side has predicated their respective arguments upon an erroneous premise, that the determination whether Mrs. Lee was a putative wife is a determination of status. The controversy over whether Mrs. Lee is the "putative wife" of H. L. Hunt *does not* involve a question of status.

The Louisiana pattern for the determination of personal status is set forth in Book I, Title I of the Civil Code. Neither the term "putative wife" nor any reference to an equivalent status can be found in the Civil Code. The expression originated in the Louisiana jurisprudence. *See, e. g., Succession of Benton*, 106 La. 494, 31 So. 123 (1902). Though Louisiana jurists sometimes referred to putative marriage as creating a "status", careful analysis of their decisions reveals that the term instead denominated the civil effects flowing from a null marriage. *See Succession of Cusimano*, 173 La. 539, 138 So. 95 (1932); *Howard v. Ingle*, 180 So. 248 (La.App.Cir. 1938). Thus, a "putative spouse" is not a spouse and has no personal status. Instead, a "putative marriage" merely creates the responsibilities that one spouse owes the other because one spouse is guilty of a fault and the other innocently believes the marriage is genuine. From one point of view, the responsibility is akin to a delict. The innocent party's rights are satisfied by a proportionate allocation of property acquired during the relationship.

■ Plaintiff's suit, therefore, addresses itself to a determination of whether a particular relationship is to be given effect as a valid marriage. A successful endeavor will entitle her to properties, the value of which far exceeds the requisite jurisdictional amount. Status simply is not involved. Plaintiff's claim meets the requirement of a jurisdictional amount.

**B. The question of indispensable parties**

Stripped of surplusage, the defendant's argument before the Court requires a determination of valuable property interests as well as of the validity of H. L. Hunt's will, and that other parties, for example the children and other beneficiaries of Mr. Hunt, are indispensable to this adjudication. Because these parties are beyond the jurisdiction of the Court, the argument runs, the Court must dismiss the action.

The United States Supreme Court has decided that when, in an equitable action, the interests of the parties before the Court were separable from those of the parties omitted, and the Court could do justice between the parties before it, without prejudice to the rights of absentees, jurisdiction would be maintained. *Horn v. Lockhart*, 17 Wall. 570, 21 L.Ed. 657 (1873). The principle has survived the adoption of the Federal Rules of Civil Procedure. Rule 19 shows a strong resemblance to the early judicial pronouncement. The rule calls for a change in method only, creating a high probability that cases will be decided no differently than before. *Provident Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Jamison v. Memphis Transit Co.*, 381 F.2d 670 (6th Cir. 1967).

In the instant case, consideration of the indispensable party question depends on the nature of the claims. If the action required determination of the validity of H. L. Hunt's testament, the Court would dismiss it for want of certain legatees.[2] However, the validity of Mr. Hunt's will plays no role in the determination of plaintiff's rights.

**2.** It is important to note the distinction between an action to "set aside" and an action "to construe". In the former action, the validity of the whole instrument is under attack and relief cannot be granted without the joinder of all interested parties so that their respective interests can adequately be protected. In the latter action, however, only a portion of the will is under attack and, consequently, issues can be severed, allowing the Court to grant partial relief without the presence of persons not parties to the suit.

She does not seek to alter the scheme of property disbursement within the estate, she seeks a judicial determination of the property, presently under the control of the executor, that devolved to her as a result of the alleged relationship with Hunt. The property, if any, became part of plaintiff's property *before* the death of Mr. Hunt; it simply cannot comprise part of the Hunt succession. The devolution of this property, therefore, is not dependent upon a document that controls only property falling within the estate of the deceased.

This suit deals solely with the resolution of ownership claims. A successful suit by plaintiff would result in a declaration that certain properties were owned by plaintiff. Any properties which remained then would be delivered by the executor to the proper beneficiaries or legatees according to the dictates of the testament.

No judgment reached here would cloud the title of property belonging to parties not before the Court, nor would it subject defendant to future litigation. Plaintiff seeks only a declaration of her ownership interest in properties in the possession of Mr. Hunt at the time of his death, and now in the possession of his executor. In this circumstance, Louisiana law provides a simple rule: the succession representative *alone* is the party to defend the suit. La.C.C.P. arts. 734, 3211. The defendant need fear future litigation only if he compromises his fiduciary obligation. It is of course true that parties not before the Court may be affected by the outcome of this action but that economic impact is no different in quality from the effect of the assertion of a succession debt or a tort claim against the executor. The executor adequately can protect and defend the rights of other interested parties without the necessity of their joinder.

## C. Domestic and Probate Questions

Defendant also asserts that the Court lacks jurisdiction to entertain plaintiff's claims because they fall within the domestic relations and probate matters exception to diversity jurisdiction. The exceptions, if they exist, are not found within the statute; they are the creation of the jurisprudence. Both exceptions developed at a time when the diversity statute granted jurisdiction over "suits of a civil nature in law or in equity". Domestic relations and probate matters fell outside this designation, for historically they were adjudicated before the ecclesiastical courts. *Maynard v. Hill*, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1887). In 1948, the judicial code was amended, ostensibly to remove the statutory foundation upon which these limiting interpretations had arisen. However, the attempt failed and the exceptions remained. *See* Wright, Miller and Cooper, Federal Practice and Procedure [hereinafter cited as Wright & Miller], § 3609 (1975). These limitations on the judicial power have been criticized. *See, e. g., Spindel v. Spindel*, 283 F.Supp. 797 (E.D.N.Y.1968). New attitudes have limited these exceptions severely, thereby reducing their impact on diversity jurisdiction. Restraints are being cast aside, allowing federal courts to exercise their jurisdiction in all but the most extreme sets of circumstances. In view of this developing authority, the instant facts do not justify a finding that the Court is without jurisdiction.

This case does not involve a determination of domestic relations. As has already been demonstrated, no question of marital status, past or present, is presented. If successful, the plaintiff will be declared the owner of an interest in properties presently under the executor's control. Where the basic issue is an inquiry into property rights, the domestic relations exception is not applicable. Vestal and Foster, *Implied Limitations on the Diversity Jurisdiction of Federal Courts*, 41 Minn.L.Rev. 1, 31 (1956).

Nor does the action fall within the probate exception to diversity jurisdiction. Generally, federal courts entertain actions against executors in which plaintiffs attempt to set forth claims against an estate. *See* Wright & Miller at § 3610. Adjudication of these claims neither interferes with local probate proceedings nor involves the

assumption of general jurisdiction of the probate proceedings nor requires control of property in a state court's custody. *Id.* *See Markham v. Allen,* 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946); *Waterman v. Canal-Louisiana Bank & Trust,* 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909). The determination whether a party has a claim to property within the control of the executor usually does not interfere with state probate proceedings. Therefore, a federal court may take jurisdiction in such a matter. *See, e. g., Harrison v. Moncravie,* 264 F. 776 (8th Cir. 1920). Similarly, a federal court will entertain suits by claimants to establish a right to a distributive portion of an estate *or* a debt due from decedent. Wright § Miller at § 3610. *See also Akin v. Louisiana National Bank of Baton Rouge,* 322 F.2d 749 (5th Cir. 1963); *McClendon v. Straub,* 193 F.2d 596 (5th Cir. 1952); *Hess v. Reynolds,* 113 U.S. 73, 5 S.Ct. 377, 28 L.Ed. 927 (1885). Plaintiff's claim is within the Court's competence on both grounds; a successful suit would create a debt owed by the deceased that would be satisfied by a declaration of ownership to a portion of the properties within the Hunt estate.

The Court, therefore, has jurisdiction over the subject matter of the suit.

## VENUE

The venue problem has received extensive attention by all parties. Indeed, it was the main thrust of defendant's prior attack on this action in the Middle District. The determination of venue by the Middle District of Louisiana is not conclusive; this Court can reexamine its decision.

■ The only possible basis for plaintiff's assertion that venue lies in the Western District of Louisiana is that the claim arose in Shreveport. It is true that a domicile was established in this city during 1925, but the claim did not arise at that time. During plaintiff's residency in Shreveport, she possessed an inchoate right to a portion of H. L. Hunt's property acquired during their relationship, which could not be *realized* until this relationship was terminated. This circumstance could occur only when plaintiff discovered the impediment to her "marriage" and then terminated the relationship. Plaintiff's right to bring the action thus had its birth in Dallas, Texas, for it was there that she discovered the existence of Hunt's possible marriage to another. The claim arose in Dallas and, hence, Shreveport normally would constitute an improper venue.

■ Venue in diversity actions is judged by § 1391(a) of Title 28 of the United States Code:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided. by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

Venue limitations do not affect the subject matter jurisdiction of a federal court, but are designated for the practical convenience of the litigants. They may be, and frequently are, waived. *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *Panhandle Eastern Pipe Line Co. v. Federal Power Commission,* 324 U.S. 635, 65 S.Ct. 821, 89 L.Ed. 1241 (1945). The privilege can also be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct. *Neirbo Co. v. Bethlehem Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939).

Defendant urges that *Neirbo* and its progeny would find a waiver of the *venue* privilege only in the narrow number of . cases and, further, that the surrender of this personal convenience would be limited to certain courts of the state. This position has no merit. The designation of the agent certainly covered the instant action, for the executor is the proper party defendant in actions against the deceased. La.C.C.P. art. 734. Moreover, even if there is a limit to the executor's consent,[3] the removal of ven-

---

3. Any limit is questionable in light of the statement of *Olberding v. Illinois Central Railroad Co.,* 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953), that the surrender of venue privilege extends to all courts sitting within a forum, *both* state and federal, 346 U.S. at 342, 74 S.Ct.

ue protection extended throughout the district where the executor opened the ancillary proceedings, namely, the Western District of Louisiana.

■ The defendant-executor's appointment of an agent to accept process within Louisiana was sufficient to waive the venue protection afforded the estate as a litigant. *See Olberding v. Illinois Central Railroad Co.,* 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); *Neirbo Co. v. Bethlehem Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1969); *Davis v. Smith,* 253 F.2d 286 (3d Cir. 1958); *Herpst v. S. B. I. Liquidating Corp.,* 279 F.Supp. 928 (E.D.Pa.1968); *Leonard v. Wharton,* 268 F.Supp. 715 (D.Md.1967); *Appeal dismissed* 268 F.Supp. 715, *cert. denied* 393 U.S. 1028, 89 S.Ct. 624, 21 L.Ed.2d 571, *rehearing denied* 393 U.S. 1112, 89 S.Ct. 857, 21 L.Ed.2d 813.

The Court therefore holds that defendant's designation of an agent for service in Louisiana subjected the estate to suit in any district of Louisiana.

## ABSTENTION

Defendant argues that the Court should exercise its discretion and abstain from deciding the action. The contention is predicated upon a construction of the cause as a suit that seeks relief pursuant to the provisions of the Declaratory Judgment Act. Defendant asserts that any judgment in the action will produce results not sanctioned by the Act, namely, (1) an interference with the administration of Louisiana's internal affairs and (2) litigation in at least eight other states.

■ The abstention doctrine is not applicable in this case. Its use should be limited to situations in which the exercise of federal jurisdiction would violate principles of restraint that should guide a court sitting in equity. This case involves none of those troublesome problems.

■ It is a fundamental proposition that there is no absolute right to a declaratory judgment in the federal courts. 28 U.S.C. § 2201 (1970) states that courts "*may* declare the rights and other legal relations of any interested party seeking such declaration". (Emphasis added.) Thus, whether to grant or deny relief in a declaratory judgment action is within the discretion of the Court. *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The discretion, however, is not unlimited; it must be premised upon judicially sound considerations. *Wacker v. Bisson,* 348 F.2d 602 (5th Cir. 1965); *cf. Akin v. Louisiana National Bank of Baton Rouge,* 322 F.2d 749 (5th Cir. 1963).

■ The principles governing the exercise of a court's discretion to grant declaratory relief are so numerous that a general formulation is difficult.[4] "Perhaps the best general guide for the courts is the Supreme Court's [teachings] in *Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948) [which holds] that the discretion is to be 'exercised in the public interest' and in such a way as 'to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief.'" *See Hanes Corp. v. Millard,* 174 U.S.App.D.C. 253, 531 F.2d 585, 591–2 (1976). Also quoted with some frequency is the general rule that the controversy must be ripe for judicial resolution before a declaratory judgment will lie. Failure to demonstrate that the judgment will settle the controversy thus mandates a denial of the form of relief. *See, e. g., Fair v. Dekle,* 367 F.3d 377 (5th Cir. 1966), *cert. denied* 386 U.S. 996, 87 S.Ct. 1316, 18 L.Ed.2d 344; *cert. denied* 389 U.S. 994, 88 S.Ct. 495, 19 L.Ed.2d 489; *rehearing denied*

83; *see also Ex parte Schollenberger,* 96 U.S. 369, 377, 24 L.Ed. 853 (1877).

4. Among the factors relevant to the propriety of entertaining the cause are: (1) whether the judgment finally would settle the controversy between the parties; (2) whether other proceedings are pending in which the action can be resolved; (3) the convenience of the parties; (4) the equity of the conduct of the declaratory judgment plaintiff; (5) prevention of procedural manipulation; (6) the state of the record; (7) the degree of adverseness between the parties; and (8) the public importance of the question to be decided. *See Hanes Corp. v. Millard,* 174 U.S.App.D.C. 253, 531 F.2d 585 (1976).

389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864. Finally, this Court places emphasis on the policy that prohibits federal courts from taking any action which would impair federal-state relationships.

 In the instant case, it would violate the public interest and unduly burden the plaintiff if the Court decided to stay its hand. The issues presented to the Court are not pending anywhere else. Hence, allowing plaintiff to continue her cause will not impinge upon any action currently pending in state court. Moreover, the adjudication *will* settle the issue in controversy; whether Mrs. Lee is the putative wife of H. L. Hunt and, if so, what effects, if any, flow from that relationship.

Thus, the facts presented by this cause simply do not justify invoking a doctrine that would relegate the parties to an as-yet uncommenced action in the state courts. Indeed, the Court would be derelict in its duty if it "practically abandoned its jurisdiction over a case of which it had cognizance, and turned the matter over for adjudication to the state court." *McClellan v. Carland,* 217 U.S. 268, 281, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910).

Finally, the crux of this case is the legal effect to be accorded a purported Florida relationship. This is precisely the situation for which the federal court diversity jurisdiction was created and which a federal court is equipped to handle: the effect of a Florida relationship pressed by a Georgia plaintiff as a reason for her right to be treated as a putative wife under the laws of Louisiana. In these circumstances, the plaintiff has a right to choose a federal forum and the Court is obliged to take jurisdiction of the cause. *Akin, supra,* at p. 759.

## FORUM NON CONVENIENS

Defendant's last line of argument attempts to persuade the Court to transfer this litigation to the Northern District of Texas. 28 U.S.C. § 1404(a).

 While the federal transfer standard is broader than the common law standard for dismissal on the ground of forum *non conveniens,*[5] it is necessary that the balance of convenience and the interest of justice be *strongly* in favor of the moving party before a transfer is ordered. Neither defendant's moving papers, nor the evidence adduced at the hearing make this showing. The fairness and interest of justice simply do not dictate a transfer of this cause to the Northern District of Texas.

Accordingly, defendant's motion to transfer this proceeding is DENIED.

## CONCLUSION

The aforesaid shall constitute the Court's ruling on defendant's pretrial motion. This action shall remain on the dockets of this Court.

---

**5.** Under common law doctrine of forum *non conveniens,* plaintiff's choice of forum within the requirements of the venue statutes was inviolate unless defendant could show that such choice was *so* inconvenient that it vexed or oppressed the defendant by inflicting upon him unnecessary expense or trouble. *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *Chicopee Mfg. Corp. v. Kendall, D.C.S.C.,* 154 F.Supp. 248 (1957).