**Dorothy WELKER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY et al., Defendants.**

**No. CV 79–2143–AWT.**

United States District Court, C. D. California.

Nov. 5, 1980.

Lawrence C. Bragg, Hacienda Heights, Cal., for plaintiff.

Howard N. Gould, Doland & Gould, Beverly Hills, Cal., for defendant John Welker.

MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

This is an action in which plaintiff seeks to recover the benefits of a group life insurance policy issued by defendant Metropolitan Life Insurance Company ("Metropolitan")[1] under which decedent John (Jack) William Welker ("decedent") was an insured. Jurisdiction is invoked on the basis of diversity of citizenship, 28 U.S.C. § 1332.

The first amended complaint alleges that plaintiff and decedent were married in a Nevada ceremony on May 6, 1967, and cohabited as husband and wife until decedent's death in 1977. Both plaintiff and decedent had been previously married. Decedent had been previously married to defendant Rosella Welker.[2] Proceedings to dissolve that marriage were commenced in July, 1967 and an interlocutory decree dissolving that marriage was entered on September 22, 1967; however, no final judgment was ever entered. Plaintiff had commenced proceedings to dissolve her prior marriage in 1966, but a final judgment of dissolution was not entered until July 18, 1967. Plaintiff alleges that she entered into her marriage with decedent in the good faith belief that both her and decedent's prior marriages had been legally terminated.

The Metropolitan policy was acquired during plaintiff's putative marriage to decedent and the policy premiums were paid from decedent's earnings during the time he and plaintiff were cohabiting as husband and wife. Plaintiff's demand, upon decedent's death, that the policy proceeds be paid to her was refused by Metropolitan. It is alleged that the policy proceeds were paid to defendants Rosella Welker and John Welker.

Plaintiff seeks a declaration that her marriage to decedent was a putative marriage and, thus, that she was the putative wife of decedent. She alleges that the policy acquired during that marriage was qua-si–community property. She further seeks a declaration that she is the "surviving spouse," as that term is used in California's intestate succession statute, Cal.Prob.Code § 201, and, thus, entitled to the policy benefits under the "surviving widow" clause of the policy. Finally, she seeks damages in the amount of the face amount of the policy and the imposition of a constructive trust on all policy proceeds paid to defendants Rosella Welker and John Welker.

This matter is now before the Court on defendant John Welker's motion to dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction for failure to sufficiently allege the requisite amount in controversy. At the hearing on the motion to dismiss, the Court raised the question of whether this case fell within the domestic relations exception to diversity jurisdiction and, at the Court's request, the parties have briefed this issue.

## SUBJECT MATTER JURISDICTION

*Domestic Relations Exception*

■ At least since 1858, the Supreme Court has recognized a domestic relations exception to the diversity jurisdiction of federal trial courts. *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). This doctrine is based on the notion that "the whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930) (quoting *Ex Parte Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890)). As articulated in this circuit, the rule is that where, in a diversity case, the primary issue involves the status of parent and child or husband and wife, the district court should decline jurisdiction. *Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968).

■ The case at bench is a case involving the status of putative husband and wife.

1. Plaintiff and defendant Metropolitan have reached a settlement, pursuant to which the action has been dismissed as against that defendant with prejudice.

2. Defendant Rosella Welker has not appeared in the action.

Plaintiff seeks an express declaration of status, *i. e.*, that there existed a putative marriage relationship between her and decedent. All of the relief plaintiff seeks from this action is subsidiary to and dependent upon that status. The Court would be called upon to apply California's community property laws to the question of whether or not decedent's life insurance policy was quasi–community property. It would also be necessary to construe California's intestate succession statute–the application of which is dependent on family status–in order to consider plaintiff's claim that she is the "surviving widow" of decedent and, therefore, the beneficiary of the policy. *See* Cal.Prob.Code § 201. Even as framed by plaintiff, the primary issue is a domestic relations question. "This suit," according to plaintiff, "addresses itself to a determination of whether the relationship between Plaintiff and decedent John Welker is to be given legal effect as a valid marriage."

It is, therefore, concluded that this is a case involving the "status of husband and wife." *Buechold v. Ortiz, supra*, 401 F.2d at 372. Further, the Court would be required to determine the rights of the parties before it with respect to a division of the quasi–marital estate, a matter reserved exclusively to the states and not within the power granted to the federal courts by the Constitution. *Cf., Williamson v. Williamson*, 306 F.Supp. 516, 518 (W.D.Okla.1969). *See also, Stone v. Stone*, 450 F.Supp. 919, 922–23 n.7 (N.D.Cal.1978), *aff'd*, 632 F.2d 740 (9th Cir.1980). Therefore, based on notions of federalism and the competency of the federal courts to decide state domestic relations issues, this action must be dismissed for lack of subject matter jurisdiction.

Plaintiff contends that the primary issue in this case is an inquiry into property rights, not a determination of marital status, and relies on two cases in support of her position.

In *Oxley v. Sweetland*, 94 F.2d 33 (3d Cir. 1937), the first case cited by plaintiff, the only issue before the court was the fact of the marriage between the decedent and the plaintiff who sought to establish her right under Virginia law to his personal property. Here, the Court will be required to establish the existence of a putative spousal relationship between plaintiff and the decedent. More is involved than simply determining whether, in fact, a marriage ceremony ever took place, as was the case in *Oxley*.

Plaintiff's second case, *Lee v. Hunt*, 431 F.Supp. 371 (W.D.La.1977), is on point, but appears to construe the domestic relations exception too narrowly. That case also involved a controversy of whether the plaintiff was a putative spouse, there under Louisiana law. There the court held that a determination of marital status was not involved because under Louisiana law a putative spouse was not a spouse and had no personal status. With respect to marital status, *Hunt's* narrow reading of the domestic relations exception is that the only determinations which fall within the exception are those of whether a marriage is valid under state law. However, the consequences which flow from a determination of quasi–marital status are near indistinguishable from those that turn on a determination of true marital status and a state's interest in the determination of the question is equally strong as with questions involving valid marriages. Indeed, in states that grant such recognition, the state's recognition or creation of the status of putative spouse is, itself, a strong indication of the state's interest in this essentially domestic relations question.

Thus, all of the reasons which support the domestic relations exception, *Ohio ex rel. Popovici v. Agler, supra*, 280 U.S. at 383, 50 S.Ct. at 154, apply to the case in which the determination of putative spousal status is the primary issue. For these reasons, we decline to follow *Lee v. Hunt, supra*.

*Amount in Controversy*

Defendant John Welker has also challenged plaintiff's bare allegation that the exact amount in controversy "is at this time unknown, but which is in excess of $10,000." In response to the motion to dismiss, plaintiff filed an affidavit stating that the face

amount of the Metropolitan policy was $18,-000 and that the full face amount, plus accrued interest, was paid to defendant John Welker.[3] There is no allegation and plaintiff does not contend that payment was made jointly to defendants John Welker and Rosella Welker or that Rosella Welker is jointly liable on any other basis.

 In order to properly plead diversity jurisdiction under 28 U.S.C. § 1332, the plaintiff must allege that there is $10,000 in controversy against each defendant unless the plaintiff's claims against the defendants are common and undivided so that the defendants' liability is joint and not several. *Libby, McNeill, and Libby v. City National Bank*, 592 F.2d 504, 509–10 (9th Cir. 1978); *United States v. So. Pac. Transp. Co.*, 543 F.2d 676, 683 n.9 (9th Cir. 1976). Inasmuch as it now appears that plaintiff cannot allege the requisite amount in controversy against defendant Rosella Welker, this failure provides an additional basis for dismissing the action as against her for lack of subject matter jurisdiction.

## PERSONAL JURISDICTION

Defendant John Welker's claim of lack of personal jurisdiction over him in California is based on the uncontroverted fact that he is a citizen and resident of Nebraska and that he neither solicited nor received the benefits of the Metropolitan policy in California. The record contains no showing of any contacts by this defendant in California. Plaintiff's claim of personal jurisdiction is based on the argument that the policy premiums were paid in California, that by accepting the policy proceeds as a "survivor" under California law he accepted the benefit and protection of California's intestate succession laws and that his acceptance of the policy proceeds were calculated to have an effect in California, namely, to cause plaintiff to be deprived of her rights under California community property laws.

 It requires no extended discussion to conclude that the constitutionally required minimum contacts for the assertion of personal jurisdiction, *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), are absent in this case with respect to defendant John Welker. The facts here and plaintiff's argument are similar to but weaker than those rejected by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). This Court, in a diversity action, lacks personal jurisdiction over defendant John Welker.

## ORDER

Defendant John Welker's motion is granted and the action is dismissed as against him for lack of subject matter jurisdiction and, alternatively, for lack of personal jurisdiction.

The action is dismissed, *sua sponte*, as against the only remaining defendant, Rosella Welker, for lack of subject matter jurisdiction.

The dismissals are of the action and, thus, without leave to amend and without prejudice.

---

**3.** The Court assumes that plaintiff can, in good faith, amend her complaint to so allege.