WALTER A. KOEPPLIN, APPELLANT, v. PFISTER HYBRID COMPANY OF FREMONT, NEBRASKA, A CORPORATION, APPELLEE.

138 N. W. 2d 637

Filed December 10, 1965. No. 35998.

Richards, Yost & Schafersman, for appellant.

Sidner, Gunderson, Svoboda & Schilke, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

This is an action by Walter A. Koepplin on his written contract of employment with the Pfister Hybrid Company of Fremont, Nebraska, praying for the reformation of the contract and an accounting of the amounts due thereon. At the close of plaintiff's evidence, the trial court sustained a motion to dismiss for insufficiency of the evidence to establish a cause of action. The plaintiff has appealed.

The organization of the defendant company grew out of the following circumstances: In 1939, Pfister Associated Growers was organized in the State of Illinois. Each stockholder of the corporation had a business of his own for the purpose of producing, processing, and distributing hybrid seed corn and related products. Each stockholder had a contract with Pfister Associated Growers for the production of seed corn for sale to the

latter in accordance with estimates and allocations previously agreed upon. Each stockholder, who is in fact a grower, usually sells to Pfister Associated Growers all seed grown except that needed in the local territory. At the times here involved, Pfister Associated Growers had 24 stockholders or growers.

In 1944, 10 of these growers organized the defendant company with its principal place of business at Fremont, Nebraska. The company entered into a written contract of employment with the plaintiff to organize and manage the defendant company. Plaintiff served as manager from August 1, 1944, until October 29, 1962, under several successive written contracts of employment.

The last contract was entered into on August 1, 1958. Under this contract plaintiff was to organize and manage the sales, production, and distribution of Pfister hybrid seed corn and hybrid sorghum seed in accordance with the instructions and policies of the company formulated by its board of directors. As compensation plaintiff was to receive $800 per month and 25 percent of the company profits based on the following method of accounting: The wholesale cost of seed from stockholders was to be established by the board of directors, but not to exceed $52\frac{1}{2}$ percent of the established retail price of regular hybrids including cost of bags and transportation. Unsold corn was to be figured on inventory at the regular market price. Net profit was to be determined after all encumbrances and expenses were deducted but not including capital stock taxes, excess profits tax, or income taxes. The contract was terminable by either party on giving notice by wire or in writing.

The defendant was a sales organization and was not itself a producer. It was the duty of the manager to estimate the needs for the following year and after approval by the board of directors to make allotments to and contracts with stockholder-growers for the amount

and types of hybrid corn and sorghum seed needed. The seed so produced was paid for by the defendant corporation and sold to local customers and the Pfister Associated Growers.

It appears to have been the policy of the company to have a carryover of about 21,000 bushels of seed corn each year. In 1960, 1961, and 1962, sales fell off, due largely to additional restrictions on corn ground allotments by the government. This resulted in a larger carryover of corn and a continuing increase in the amount of corn shown by the inventory. The fact that this carryover corn was paid for at the contract price of hybrid seed corn and inventoried at the market price of ordinary corn, indicated such a loss as to deprive plaintiff of a profit bonus that he would otherwise have. The contract of employment provides that in determining the profits of the corporation for the purpose of determining the amount of plaintiff's bonus, the carryover seed shown in the inventory was to be carried at the regular market price irrespective of its cost. It cannot be questioned that if the carryover seed corn was inventoried at its cost price rather than at the regular market price of corn, a substantial profit would be shown which would entitle plaintiff to 25 percent thereof as a bonus. The trial court applied the terms of the employment contract according to its terms after holding that no basis existed for reforming it.

The defendant is a corporation controlled by its board of directors. A corporation must act through its officers and agents, and the presumption is that their acts are authorized by the corporation. The acts of such board must ordinarily be established by the minutes of the board of directors authorizing the questioned actions. But authorized acts of a board of directors may not be disavowed merely because the authorization does not appear in its minutes. While the minutes of a corporation's board of directors are the best evidence of its affirmative actions, parol testimony by a person present

at the meeting to prove action actually taken but not recorded in the minutes is competent. Omaha Wool & Storage Co. v. Chicago G. W. R.R. Co., 97 Neb. 50, 149 N. W. 55, Ann. Cas. 1917A 358.

It is the contention of the plaintiff in this case that the question of the effect of carrying inventoried hybrid seed at the regular market price upon his bonus was discussed with officers and directors of the defendant company in and out of regular board meetings, and that it was agreed that plaintiff's bonus would be paid when the carryover seed appearing on the inventory was sold. There is evidence in the record that such conversations took place, but the controversy results from a difference in construction of the language used. Defendant contends that the evidence meant that although profits were reduced in years when the carryover seed was in greater quantity, the profit would accrue when it was subsequently sold as seed corn; in other words, that it merely delayed the profit accrual. This evidence assumed that plaintiff would continue in the employ of the company and would be in a position to get his bonus when the holdover seed would be sold as hybrid seed corn. But in the instant case the plaintiff was notified on July 31, 1962, that his employment contract would not be renewed. He did, however, continue as manager until October 29, 1962, a date prior to the sale of any holdover corn.

It is assigned as error that the trial court unduly restricted the evidence of conversations between the plaintiff and the board of directors which the plaintiff contends resulted in an agreement modifying his employment agreement of August 1, 1958. As we have heretofore stated there was some evidence of conversations between the plaintiff and the officers and directors of the corporation to the effect that plaintiff would get his bonus when inventoried seed was sold. Obviously this was true if it resulted in profit to the company. But when plaintiff's employment contract was not renewed

on August 1, 1962, at which time the inventoried corn had not been sold, the plaintiff seeks to have the original written contract "amended and completed and clarified as shown by the subsequent oral agreements to pay to the plaintiff 25% of the profits as a result of the reduction of the inventory."

The minutes of the board of directors do not show that a new contract was made or the old one modified. There is no evidence or offer of proof in this record that the board of directors entered into any new agreement or agreed to modify the written agreement of August 1, 1958, by action not shown by the minutes. There is no evidence of mistake, fraud, or inequitable conduct in the making of the contract. The most that can be said is the evidence shows that officers and directors of the corporation stated the profits and bonus would normally follow as the inventory was reduced. This was no misrepresentation of fact, even though it did not normally follow because of plaintiff's discharge as manager before the inventoried seed could be sold. The discharge of the plaintiff possibly created an unanticipated condition. The contract provided that either party could terminate the contract by notice at any time. The contingency was apparent in the contract when it was signed and, in the absence of an enforcible modification, it is enforcible according to its terms.

The contract of employment is not indefinite or ambiguous. There is no evidence of fraud, mistake, or inequitable conduct. The record does not disclose any evidence or offer of proof tending to support an agreement by the board to modify the contract of employment.

In order to warrant the reformation of a written contract, the burden of proof is on the party requesting such relief to show his right thereto by evidence that is clear, convincing, and satisfactory. Failing this, the written contract must stand as made. Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448.

The controversy, reduced to a minimum, is one where

the plaintiff became the manager of the corporation under a written contract for a fixed salary and a percentage of the profits. It was the manager who estimated the amount of production to meet future needs, subject to the approval of the board of directors, which it always gave. The basis of determining the profit was by an accounting method fixed by the contract. The contract was terminable at the end of any fiscal year by written notice by either party. The fact that when the plaintiff's contract was not renewed and there was a large quantity of carryover seed shown by the inventory does not have the effect of changing his contract. It is true that if plaintiff had continued as manager and if he had sold the holdover seed, he would have received 25 percent of any profit resulting therefrom. Because his contract was terminated at a time when the inventory was high, he seeks a reformation of his contract to give him a bonus on unsold corn which is not due until sold at a price producing a profit. For ought the evidence shows the inventoried corn may never be sold at a profit. In the absence of a subsequent agreement, a high inventory, operating to his disadvantage, does not alone afford a basis for reformation of the contract.

We conclude, as did the trial court, that the evidence will not sustain an action for the reformation of the contract, and that it must be enforced as made.

AFFIRMED.