S.M.S. TRUCKING COMPANY, APPELLEE, v. MIDLAND VET, INC., APPELLANT.

185 N. W. 2d 667

Filed April 9, 1971. No. 37673.

Ray C. Simmons, for appellant.

Yost, Schafersman, Yost & Lamme, for appellee.

Heard before WHITE, C. J., CARTER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an appeal from a jury verdict and judgment awarding damages to the plaintiff as a result of an automobile-truck collision. We affirm the judgment of the district court.

All of the following facts have been stipulated by the parties. The defendant is a Nebraska corporation dealing in veterinary supplies with its principal offices in Fremont, Nebraska. At about 2:25 a.m. on the morning of January 24, 1968, Darwin Wegner, at that time president and general manager of the defendant, driving an automobile owned by defendant, was in a collision with the plaintiff's truck. The collision occurred when Wegner, proceeding south, went left of the highway centerline into the northbound lane of traffic, colliding head-on with plaintiff's truck. Wegner was killed instantly in the collision. Wegner did not have proper control of his automobile at the time of the accident; plaintiff's truck was entirely within its own lane; Wegner was driving while under the influence of alco-

hol, his blood having 0.31 percent alcoholic content; and plaintiff's driver was free of all negligence in the collision. Plaintiff's stipulated damages were $13,801.46.

The trial court submitted the issue of defendant's liability for Wegner's negligence to the jury. The jury found for the plaintiff and awarded the full stipulated amount of damages.

Defendant contends the trial court erred in refusing to hold that the proper statute of limitations had run against the plaintiff's action. Plaintiff did not file a claim in Wegner's estate within the prescribed period set by the county court, but elected to sue Wegner's employer, the defendant. Under section 30-609, R. R. S. 1943, if a person having a claim against a deceased person's estate does not exhibit his claim to the probate court within the time set by the court for that purpose, he is forever barred from recovering on the claim. Defendant contends that this statute, commonly referred to as the nonclaim statute, not only applies to tort actions brought against a decedent's estate, see Rehn v. Bingaman, 151 Neb. 196, 36 N. W. 2d 856 (1949), but also to actions brought against the decedent's employer when based on the doctrine of respondeat superior. Under this theory plaintiff would be barred from suing the defendant since plaintiff failed to file the claim. Plaintiff argues that the 4-year general statute of limitations on torts, section 25-207, R. R. S. 1943, applies.

We are unable to find any cases from any jurisdiction dealing directly with this problem nor have we been referred to any by the parties. However, we believe certain principles announced in other cases from this court are sufficiently analagous to show there is no merit to defendant's contention.

This is not a question of determining the master's liability after the servant has been found not liable. Here the servant is protected because of a statute of limitations, not because of any decision on the merits. Nebraska has enacted the nonclaim statute with the pur-

pose of securing the earliest possible settlement of the estates of deceased persons compatible with the just rights of creditors. The limitations embodied in that legislation exist independent of the general law of limitation affecting actions against living persons. In re Estate of Tucker, 128 Neb. 387, 258 N. W. 645 (1935).

It is true that the basis for plaintiff's claim is the imputed negligence of the deceased employee; but, under the particular facts of this case, any action the plaintiff may have against the employer must be considered independent of the employee's liability. The employer and employee are regarded as joint tort-feasors having joint and several liability. Allen v. Trester, 112 Neb. 515, 199 N. W. 841 (1924); Fonda v. Northwestern Public Service Co., 134 Neb. 430, 278 N. W. 836 (1938). In addition, in Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N. W. 712 (1940), this court said: "Where an employee acts under the direction of his employer, the employer is liable, not merely under the rule of respondeat superior, but rather as a joint participant in the acts complained of. McInerney v. United Railroads, 50 Cal. App. 538, 195 Pac. 958. See, also, McCullough v. Langer, 23 Cal. App. (2d) 510, 73 Pac. (2d) 649. The employees and the company are, in fact, principals and joint participants. 'So a verdict against the master and an acquittal of the servant will be sufficient to sustain a judgment against the master where the act resulting in the injury complained of was committed under the express command of the master.' 39 C. J. 1368." Although that case dealt primarily with the right of an injured third person to sue an employer and employee together with the same action, the quoted excerpt, which discusses the nature of the master-servant relationship, applies to the case presented here. As a result, the causes of action against the deceased employee and the employer were joint and several, the action against one not depending on the right to sue the other. The trial court was correct in ruling that the

nonclaim statute did not apply to plaintiff's action against the defendant.

The defendant also claims the trial court erred in submitting the issue of defendant's liability for Wegner's negligence to the jury. Defendant contends there were no disputed facts or conclusions which justified submitting the issue to the jury, thus allowing it to find that Wegner was within the scope of his employment at the time of the accident. We find no merit in defendant's contention since an examination of the evidence shows that, at a minimum, a jury question was presented.

On the afternoon of January 23, 1968, Wegner drove from Fremont to Beemer, a distance of approximately 46 miles, in a 1966 Oldsmobile owned by the defendant. As the defendant's president and general manager, Wegner had been furnished this car to carry on the defendant's business. There is no indication from the record that the car was used for anything but company business.

The evidence shows that Wegner went to Beemer to conduct business for the defendant. While he was there he contacted Jim Albers, a customer of the defendant, and subsequently discussed business matters with Forrest Magnuson, the defendant's salesman. Wegner had arrived in Beemer at approximately 4 p.m. He talked with Albers for about one-half hour and then both went to the Pastime Bar where they remained for several hours. While at the bar, they had drinks, discussed veterinary business of the defendant, and generally talked of cattle feed supplements and cattle feeding operations. They were subsequently joined by Magnuson. Later the trio moved from the Pastime Bar to the Indian Trails Country Club where the drinking and discussing of business matters continued.

During the evening Magnuson talked to Wegner about some difficulties he was having collecting on certain accounts owed the defendant. The two agreed to meet in Beemer at 8 a.m. the following morning to further discuss the delinquent accounts.

Both Magnuson and Albers were under the impression that Wegner intended to stay overnight in Beemer. Wegner had had both Albers and the bartender make a reservation for him at a local motel. However, after taking Albers to his pickup truck, Magnuson having left in his own car, Wegner drove back toward Fremont. It was then that he collided with plaintiff's truck. Although no one will ever know for sure, it was apparently Wegner's intention to go home for the night and return to Beemer the next day for his meeting with Magnuson. The defendant claims that since the collision occurred while Wegner was apparently headed home, he was not within the scope of his employment.

In a case such as this, whether the act in question was within the scope of employment is, ordinarily, one of fact for the determination of the jury. Watts v. Zadina, 179 Neb. 548, 139 N. W. 2d 290 (1966); LaFleur v. Poesch, 126 Neb. 263, 252 N. W. 902 (1934). The mere fact that an agent was not, at the exact time of the accident, immediately pursuing the principal's business purposes does not necessarily take him out of the scope of employment. Such a question must be determined by looking at all of the relevant factors concerning the nature of the employment as well as the purpose and degree of any alleged deviation. LaFleur v. Poesch, supra; Peterson v. Brinn & Jensen Co., 134 Neb. 909, 280 N. W. 171 (1938); Vanderlippe v. Midwest Studios, Inc., 137 Neb. 289, 289 N. W. 341 (1939).

Wegner was both the president and general manager of the defendant. He had been invested with broad general powers of management and superintendence, and was obviously the principal officer of the defendant, having general charge of the defendant's activities. His powers were coextensive with the powers of the defendant itself. He had broad implied or ostensible authority to do any act which was usual or necessary in the conduct of the defendant's business. See, Barber v. Stromberg-Carlson Tel. Mfg. Co., 81 Neb. 517, 116 N. W. 157

(1908); Koepplin v. Pfister Hybrid Co., 179 Neb. 423, 138 N. W. 2d 637 (1965); Geyer v. Walling Co., 175 Neb. 456, 122 N. W. 2d 230 (1963). Wegner was pursuing his duties for the defendant just prior to the accident and he was scheduled to again perform company business the following morning. *The business purpose of the trip was clearly shown.* The car he was driving at the time of the collision was owned exclusively by the defendant, having been given to Wegner to help conduct company business. The cumulative effect of this evidence was to show a business use of the car at the time of the accident, even though it may have been in combination with a personal purpose. This was sufficient to present a jury question.

The judgment of the district court is correct and is affirmed.

AFFIRMED.

SPENCER, J., participating on briefs.

BOSLAUGH and SMITH, JJ., concur in the result.