604 F.2d 1151
 GREYHOUND LINES, INC., Appellee,
v.
LEXINGTON STATE BANK AND TRUST CO., Special Administrator of
the Estate of Nickolas D. Ourada and Personal
Representative of the Estate of Nickolas
Dean Ourada, Appellant.
 No. 79-1085.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1979.
Decided Sept. 11, 1979.
Rehearing and Rehearing En Banc Oct. 3, 1979.
 
 Thomas A. Grennan, Eugene Welch, Gross, Welch, Vinardi, Kauffman, Day & Langdon, Omaha, Neb., for appellant.
 David S. Houghton, Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for appellee; Lyle E. Strom, Omaha, Neb., on the brief.
 Before HEANEY and STEPHENSON, Circuit Judges, and MARKEY, Chief Judge.*
 STEPHENSON, Circuit Judge.
 
 
 1
 This diversity tort action arose out of a collision near Kearney, Nebraska, on December 17, 1975, between a bus owned by plaintiff-appellee, Greyhound Lines, Inc., and a pickup truck driven by defendant's decedent, Nickolas Dean Ourada. Greyhound Lines, Inc. (Greyhound) is a California corporation, and the Lexington State Bank and Trust Co. (the Bank), subsequently appointed Special Administrator of the estate of Ourada, is a Nebraska state bank. Ourada died on December 17, 1975, as a result of injuries suffered from the accident which, as stipulated, occurred when the pickup truck operated by him crossed the center line of U.S. Highway 30 in a no-passing zone and collided head-on with a bus owned by Greyhound and operated by one of its employees.
 
 
 2
 The case was tried to the court[1] on December 15, 1978, on stipulated facts and supporting affidavits and exhibits. The court entered judgment on December 21, 1978, for Greyhound and against defendant in the following amounts plus costs:
 
 
 3
 (1) Compensatory damages of $21,500.00.
 
 
 4
 (2) Out-of-pocket expenses of $1,565.75.
 
 
 5
 (3) Damages for loss of use of $3,345.00.
 
 
 6
 Defendant-appellant raises three issues on this appeal:
 
 
 7
 (1) In the light of a Nebraska statute vesting exclusive jurisdiction over probate matters of Nebraska decedents in county courts, did the federal district court have jurisdiction to entertain this action?
 
 
 8
 (2) Was Greyhound's diversity action in the federal court timely filed under applicable Nebraska law?
 
 
 9
 (3) Did the trial court err in awarding damages for loss of use of Greyhound's bus, which was damaged beyond repair in the accident in this case?
 
 
 10
 Because we hold that Greyhound's action was barred by Neb.Rev.Stat. § 30-609 (Reissue 1964) and should have been dismissed by the trial court on that basis, we need not and do not reach the third issue raised on this appeal.
 
 
 11
 Nebraska Revised Statutes §§ 30-601 through 30-609 (Reissue 1964) in effect on the date of the accident and decedent's death, outline the procedures for the application for and payment of claims against a Nebraska decedent or his estate.[2]
 
 
 12
 Section 30-609[3] specifies when claims that have not been timely filed will be barred, and covers two separate situations. The first sentence of section 30-609 covers estates that have been opened and requires creditors with claims against such an estate to present those claims within the time set by the county probate judge under sections 30-603 through 30-605, or such claims "shall be forever barred." While the first sentence of section 30-609 covers estates that have been opened and for which a time limit has been established by the county court, the second sentence requires creditors with claims to cause an otherwise unopened estate to be opened within two years of decedent's death in order to present their claims against the estate. If the creditor fails to cause an unopened estate to be opened within two years of decedent's death, that creditor loses its ability to present its claim against the estate unless an heir subsequently opens the estate. First Nat'l Bank v. Bradshaw, 91 Neb. 714, 136 N.W. 1015 (1912). In other words, under section 30-609, if an estate is not opened by an heir and a creditor fails to cause the estate to be opened within two years of decedent's date of death, that creditor's claims against the estate would be "forever barred."
 
 
 13
 In addition to these time limitations placed on individuals with claims against the estates of decedents, Nebraska has also restricted a claimant's choice of forum for asserting a claim. Neb.Rev.Stat. § 30-601 (Reissue 1964). Any claim for personal injuries or property damage against a decedent must be presented for allowance in the county court against the decedent's estate instead of being maintained directly against the decedent's personal representative in an action in state district court. In re Cluck's Estate, 168 Neb. 13, 95 N.W.2d 161, 165 (1959); Rehn v. Bingaman, 152 Neb. 171, 36 N.W.2d 856, 861, Appeal dismissed, 338 U.S. 806, 70 S.Ct. 79, 94 L.Ed. 488 (1949).
 
 
 14
 With these Nebraska procedural requirements in mind, we review the action taken by Greyhound in presenting its claim against Ourada's estate.
 
 
 15
 On February 24, 1978, more than two years after the accident and Ourada's death, Greyhound filed an application for informal appointment of a special administrator of the estate of Nickolas Dean Ourada in the County Court of Dawson County, Nebraska. On that same day the County Court appointed the Lexington State Bank special administrator of the estate of Ourada. The clerk of the County Court then issued notice to creditors that they must file their claims against the estate with the County Court on or before May 30, 1978, or be forever barred. Greyhound presented its claims by filing a complaint in Federal District Court for the District of Nebraska against the Lexington State Bank as special administrator of Ourada's estate.
 
 
 16
 The Bank moved to dismiss Greyhound's complaint on the ground that Greyhound failed to present its claim against the estate in the county court, as required by Nebraska law, before proceeding directly against the personal representative in federal court. The trial court correctly ruled that the decision of the Nebraska state legislature to place exclusive jurisdiction in county courts over claims against the estates of Nebraska decedents (including tort claims against such decedents) does not act as a restriction or abrogation of a federal court's diversity jurisdiction over such claims. See Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43-44, 30 S.Ct. 10, 54 L.Ed. 80 (1909); Security Trust Co. v. Black River Nat'l Bank, 187 U.S. 211, 23 S.Ct. 52, 47 L.Ed. 147 (1902); Williams v. Hawkeye-Sec. Ins. Co.,428 F.Supp. 976, 977-78 (D.C.Neb.1977); United States v. Swanson, 75 F.Supp. 118, 123 (D.C.Neb.1947). The only requirements under 28 U.S.C. § 1332(a) are diversity of citizenship between plaintiff and defendant and an amount in controversy exceeding $10,000, both of which are satisfied in this action. In effect, a diversity plaintiff such as Greyhound has a choice of forum in which to enforce its claim against a decedent, a choice that is unavailable to non-diverse plaintiffs. But that distinction is the very basis for a federal court's diversity jurisdiction and thus cannot be the basis for complaint by a defendant in a diversity action.
 
 
 17
 The choice of forum available to Greyhound included the option of presenting its claim directly against the estate in the County Court of Dawson County, Nebraska, and thereby securing a lien on the assets of that estate, or suing decedent's personal representative for a money judgment in federal district court. In this case Greyhound chose the federal forum, and the federal court was bound under Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny to apply the law of the state that would have been applied if the action had been commenced in state court.
 
 
 18
 The operation of a double system of conflicting laws in the same State is plainly hostile to the reign of law. Certainly, the fortuitous circumstance of residence out of a State of one of the parties to a litigation ought not to give rise to a discrimination against others equally concerned but locally resident. The source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States.
 
 
 19
 Guaranty Trust Co. v. York, 326 U.S. 99, 112, 65 S.Ct. 1464, 1471, 89 L.Ed. 2079 (1945). See Groninger v. Davison, 364 F.2d 638 (8th Cir. 1966).
 
 
 20
 Which law would the appropriate state court have applied if Greyhound's claim had been pursued in state, as opposed to federal, court? The answer to this question is somewhat complicated by the passage of a new probate code by the Nebraska legislature, which code took effect on January 1, 1977. Neb.Rev.Stat. §§ 30-2201 through 30-2902 (Reissue 1975). The Bank contends that the old code provisions should apply and that the two-year statute of limitations under section 30-609 of the old code continued to run beyond the effective date of the new code (January 1, 1977). The Bank thus argues that Greyhound's suit was barred when filed more than two years after decedent's death.
 
 
 21
 Greyhound, on the other hand, argues that the judge in whose court an estate has been opened after the effective date of the new code has the discretion of applying the provisions of the old or the new code if the decedent's death occurred before the new code took effect. Greyhound goes on to argue that it complied with the provisions of the new code in filing its claim and securing a judgment against decedent's personal representative in federal district court. In the alternative, Greyhound contends that even if the provisions of the old code remained applicable, its claim against the decedent's personal representative should be governed by the four-year tort statute of limitations, Neb.Rev.Stat. § 25-207 (Reissue 1975), rather than by the two-year probate statute of limitations.
 
 
 22
 Therefore, we must first determine whether the provisions of the old probate code or the new probate code apply in this case and then whether the general tort four-year or the probate two-year statute of limitations applies to this action.
 
 
 23
 The resolution of the first issue requires an examination of the "transition provisions"[4] of the new Nebraska Probate Code. Greyhound argues that Neb.Rev.Stat. § 30-2901(b)(2) (Reissue 1975) allows a court processing an estate of a decedent who dies before the implementation date of the new probate code to apply the procedures under the old or the new probate code depending upon the circumstances of the individual case. We have no quarrel with this interpretation of section 30-2901(b)(2) regarding the Procedures to be followed by the court in which the estate has been opened. However, this provision must be read in the light of section 30-2901(b)(4), which deals with any acts or events that occurred Before the effective date of the new code that affect the rights of claimants to an estate opened After the effective date of the new code. Section 30-2901(b)(4) appears to cover statutes of limitations and the effect of the new code on any statute of limitations that commenced running before the effective date of the new code. Therefore, under section 30-2901(b) (4), if a state statute of limitations affecting Greyhound's right to present its claim against decedent's estate or its right to sue decedent's personal representative in tort commenced running before the effective date of the new Nebraska Probate Code, that statute of limitations would continue to run and would bar any actions by Greyhound not brought within its time period.
 
 
 24
 We must now determine which state statute of limitations applied to Greyhound's actions.
 
 
 25
 In analyzing this question, the trial court relied heavily on Williams v. Hawkeye-Sec. Ins. Co., supra, 428 F.Supp. 976, in which the court ruled that sections 30-601 through 30-609, since repealed, were jurisdictional limitations on the state courts only and did not operate to restrict federal court jurisdiction. To the extent that these and other provisions of the Nebraska Code represent an attempt to restrict or abrogate the Jurisdiction Of the federal district court in a diversity case, we agree with the Williams court. However, to the extent that Williams and the cases on which it relied[5] "stand for the proposition that the personal representative of a decedent may be sued in federal court Within the longer statute of limitations for tort actions," they are overruled. Id. at 978 (emphasis added).[6]
 
 
 26
 As indicated above, tort claims against a Nebraska decedent for personal injuries or property damage must be presented as claims for allowance in the county court against the decedent's estate rather than pursued in state district court. Rehn v. Bingaman, supra, 36 N.W.2d at 858. Moreover, section 30-609 requires claimants to cause the estate against which they have a claim to be opened within two years of decedent's death or their claims against that estate are forever barred. Thus, if Greyhound had not qualified under the federal courts' diversity jurisdiction, it would have been required under Nebraska law to bring its claim against decedent in county court. Furthermore, if Greyhound had failed to cause decedent's estate to be opened within two years of decedent's death (in order to present the claim against the estate), Greyhound's claim would have been "forever barred" under the second sentence of section 30-609. Thus, under state law the only state court open to Greyhound was the county court, and the statute of limitations applicable to Greyhound in that court would have been the special probate two-year statute of limitations, not the general tort statute of limitations of four years. See S.M.S. Trucking Co. v. Midland Vet, Inc., 186 Neb. 647, 185 N.W.2d 667 (197); In re Cluck's Estate, supra, 95 N.W.2d at 167. See also Wolder v. Rahm, 549 F.2d 543, 544-45 (8th Cir. 1977); Woods v. Klobuchar, 257 F.2d 313 (7th Cir. 1958).
 
 
 27
 Commencement of the action in federal district court instead of the appropriate state court did not convert the suit from a special action against an estate or decedent for which the Nebraska legislature has enacted special procedural requirements to a general tort action. "Nebraska has enacted the non-claim statute with the purpose of securing the earliest possible settlement of the estates of deceased persons compatible with the just rights of creditors." S.M.S. Trucking Co. v. Midland Vet, Inc., supra, 185 N.W.2d at 669. "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Order of R.R. Tel. v. Railway Express Agency, Inc., 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). "Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights." Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).
 
 
 28
 It appears that Greyhound did indeed sleep on its rights for a period of two years and, when it awakened from its slumber, attempted to revive its long dormant claim against the estate of Nickolas Ourada. The special two-year probate statute of limitations was enacted for just such situations and precluded Greyhound's assertion of its claim.[7]
 
 
 29
 The judgment of the district court is hereby reversed.
 
 
 
 *
 The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D.C., sitting by designation
 
 
 [1]
 The Honorable Robert V. Denney, United States District Judge for the District of Nebraska
 
 
 [2]
 Section 30-601 provides that the county probate judge, after the estate has been opened, shall "receive, examine, adjust and allow all lawful claims and demands of all persons against the deceased * * *." Under section 30-603 the county probate court is to "allow such time as the circumstances of the case shall require for the creditors to present their claims," not to exceed eighteen months from decedent's date of death
 Section 30-604 provides for an extension by the county court of the time period for presentation of creditors' claims, but not to exceed a total time period of two years from decedent's date of death.
 Section 30-605 allows creditors who have not filed claims with the county court within the time period it prescribed to "within three months after the expiration of such time, apply to the court for additional time for the filing * * * of his claim * * *." The court may grant an extension of up to three months to such tardy creditors.
 
 
 [3]
 Neb.Rev.Stat. § 30-609 (Reissue 1964) provides in pertinent part:
 Every person having a claim or demand against the estate of a deceased person who shall not after the giving of notice as required in section 30-601 exhibit his claim or demand to the judge within the time limited by the court for that purpose, shall be forever barred from recovering on such claim or demand, or setting off the same in any action whatever. If any person having such claim or demand shall fail for two years from and after the death of such decedent to apply for or take out letters of administration on the estate of such deceased person, or cause such letters to be taken out as provided for in sections 30-302 to 30-330, then such claim or demand shall likewise be forever barred.
 
 
 [4]
 Neb.Rev.Stat. § 30-2901 (Reissue 1975) provides in pertinent part:
 (b) Except as provided elsewhere in this code, on the operative date of this code:
 (2) the code applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this code;
 (4) an act done before the operative date in any proceeding and any accrued right is not impaired by this code. If a right is acquired, extinguished or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the operative date, the provisions shall remain in force with respect to that right.
 
 
 [5]
 United States v. Swanson, 75 F.Supp. 118 (D.Neb.1947), Appeal dismissed, 171 F.2d 718 (8th Cir.1949); Falcoln Seaboard Drilling Co. v. Cluck, Civ. Action No. 434 (D.Neb. July 13, 1954) (unreported)
 
 
 [6]
 The Williams court also cites Brooks v. National Bank, 251 F.2d 37, 43 (8th Cir.1958). Brooks, however, holds only that a Kansas statute, barring claims not filed within nine months after the first published notice to creditors, had no extra-territorial effect. Thus, it did not bar an action against the executor of the Kansas resident's estate brought after the nine-month limitation period in Missouri under a Missouri long-arm statute
 
 
 [7]
 Despite Greyhound's assertions to the contrary, we need not determine whether the county court abused its discretion under section 30-2901(b)(2) in order to rule as we have in this case. The only discretion the county court exercised was to follow the Procedures under the new code for the opening of Ourada's estate. The court did not rule on the validity of Greyhound's claim. The validity of the claim rested on a statute of limitations within the old statute, a statute of limitations that we have ruled the federal district court should have applied. Whether the county court acted within its discretion in employing the procedures of the new code in the opening of Mr. Ourada's estate is a question to be determined, if at all, on appeal within the state courts. Whether the federal district court correctly applied Nebraska law in the claim filed by Greyhound against Ourada's personal representative in federal district court is a question properly determinable by this court