**ROBERTS & SCHAEFER COMPANY, a Delaware Corporation, Plaintiff,**

**v.**

**The HARDAWAY COMPANY, a Georgia Corporation, Defendant/Counter–Plaintiff,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, Counter–Defendant.**

**The HARDAWAY COMPANY, a Foreign Corporation, Plaintiff,**

**v.**

**ROBERTS & SCHAEFER COMPANY, a Foreign Corporation, Defendant.**

Nos. 95–590–CIV–T–17E, 95–590–CIV–T–17.

United States District Court, M.D. Florida.

Oct. 7, 1996.

Davidson, Rief & Bakas, P.A., Tampa, FL, for Roberts & Schaefer Company, National Union Fire Insurance Company of Pittsburgh, PA.

John H. Rains, III, Mark Stephen Howard, Joseph Nicholas Tucker, William Patrick Gray, III, Sean P. Murphy, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL, Richard T. Earle, Jr., Earle & Earle, St. Petersburg, FL, for Hardaway Company.

William Stewart Dufoe, Holland & Knight, Lakeland, FL, for Mobil Mining and Minerals Co.

John H. Rains, III, Joseph Nicholas Tucker, William Patrick Gray, III, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL, for Hardaway Company.

Charles Thomas Davidson, McWhirter, Reeves, McGlothlin, Davidson, Rief & Bakas, P.A., Tampa, FL, for Roberts & Schaefer Company.

## ORDER

KOVACHEVICH, Chief Judge.

This matter is before the Court on Roberts & Schaefer Company's (hereafter "Roberts & Schaefer") and National Union Fire Insurance Company of Pittsburgh, PA.'s (hereafter "National Union") Motion to Dismiss Count IV of the Hardaway Company's (hereafter "Hardaway") Amended Counter Claim, or Alternatively, Motion for Judgment on the Pleadings.

## FACTS

1.  Mobil Mining and Minerals Company, as owner, entered into a contract with Roberts & Schaefer to design and build a Phosphate Benefication Plant located in or around Fort Meade, Polk County, Florida.

2.  Roberts & Schaefer thereafter entered into three (3) separate written contracts with Hardaway where Hardaway agreed to supply: labor and supervision, supplies, material, tools, machinery and services necessary for construction of the underground piping and electrical duct bank installations for the Mobil Mining and Minerals South Fort

Stephen O. Decker, Charles Thomas Davidson, McWhirter, Reeves, McGlothlin,

Meade Benefication Plant in return for certain payments by Roberts & Schaefer.

3. On or about April 3, 1995, Hardaway recorded in Polk County three (3) claims of Liens and Amended Claims of Liens relating to its works on the Phosphate Benefication Plant.

4. National Union, as surety, and Roberts & Schaefer, as principal, posted with the Clerk of Circuit Court in Polk County, three (3) transfer bonds and riders to the bonds transferring the Hardaway liens and amended liens to security.

5. Hardaway's Count IV of its Amended Counter Claim is an action under § 713.24, Florida Statutes, on the three (3) transfer bonds and riders posted by National Union and Roberts & Schaefer.

6. An Affirmative Defense of Roberts & Schaefer and National Union asserts:

This court lacks jurisdiction over the matters alleged in Count IV in the Amended Complaint. (Motion to Dismiss pp. 3)

7. The bonds are being held by the Clerk of the Circuit Court, Polk County, Florida.

### Standard of Review

A motion to dismiss for lack of subject matter jurisdiction is proper at this time pursuant to Rule 12(h)(3), which provides as follows:

Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

FED.R.CIV.P. 12(h)(3).

### Summarization of Arguments

In Count IV of Hardaway's Amended Counterclaim, Hardaway seeks to recover the amount of its three (3) recorded amended claims of lien from the bonds signed by National Union and Roberts & Schaefer (hereafter solely referred to as "Roberts & Schaefer") pursuant to Florida Statute § 713.24(3). This statute reads in pertinent part as follows:

Any party having an interest in such security or the property from which a lien was transferred may at any time, and any number of times, file a complaint in chancery in the circuit court of the county where such security is deposited, or file a motion in a pending action to enforce a lien, for an order to require additional security, reduction of security, change or substitution of securities, payment of discharge thereof, or any other matter affecting said security.

FLA.STAT. § 713.24(3) (1995).

In the Motion to Dismiss Count IV of Hardaway's Amended Counterclaim, Roberts & Schaefer contest this Court's subject matter jurisdiction to hear an action arising under Florida Statutes § 713.24. Roberts & Schaefer set forth the argument that since Florida Statutes Section 713.24 confers jurisdiction to the circuit court where a bond is filed, and that only such circuit court has jurisdiction to review any action against said bond. (Motion to Dismiss pp. 6) Based on this reasoning, Roberts & Schaefer assert that a grant of exclusive jurisdiction upon a particular state court to the exclusion of other state courts precludes a federal court from exercising diversity jurisdiction over that dispute. In applying these arguments to the facts in this case, the only court which possesses subject matter jurisdiction to adjudicate Count IV of Hardaway's Amended Counterclaim is the circuit court located in Polk County where the bonds are currently filed.

Whereas there exist situations where federal courts have upheld state statutes which conferred exclusive jurisdiction to state courts over specific matters, *See Waterman v. Canal–Louisiana Bank & Trust Co.,* 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909) (upholding state statutes which conferred exclusive jurisdiction over probate matters to state probate courts), the matter presented in this motion is not one of them. The only case law which addresses the issue of exclusive jurisdiction for circuit courts in matters concerning transfer bonds arising under Florida Statute § 713.24 is *Stel–Den of America, Inc. v. Roof Structures, Inc.,* 438 So.2d 882 (Fla. 4th DCA 1983).

In *Stel–Den,* the Fourth District Court of Appeal was presented with the question of whether or not a county court possessed proper jurisdiction to hear a matter concern-

ing transfer bonds arising under Florida Statutes § 713.24. *Id.* at 884. In its holding, the district court adopted a very strict construction of Florida Statute § 713.24. *Id.* The court interpreted the statute as granting exclusive jurisdiction to a circuit court where the transfer bond is filed in any action pertaining to said transfer bond. *Id.* at 884.

Roberts & Schaefer cite this decision as controlling precedent for finding that exclusive subject matter jurisdiction in actions arising under Florida Statute § 713.24 lies solely in the circuit court where the bond is filed. Applying this argument to the facts in the present case, Roberts & Schaefer assert that since subject matter jurisdiction has been granted to only the specific circuit court where the transfer bond is filed (i.e. Polk County), *See Stel–Den,* 438 So.2d at 884, this Court lacks subject matter jurisdiction over Count IV of Hardaway's Amended Counterclaim. Therefore, Roberts & Schaefer filed this Motion to Dismiss Count IV of the Amended Hardaway Counterclaim in accordance with Federal Rules of Civil Procedure 12(h)(3).

In its Motion of Opposition to Roberts & Schaefer's Motion to Dismiss Count IV of the Amended Hardaway Counterclaim, Hardaway asserts that Roberts & Schaefer's claims are incorrect for three (3) reasons. First, the court in *Stel–Den* did not specifically deal with the issue of exclusive jurisdiction concerning a federal court siting in diversity jurisdiction over an action arising under Florida Statute § 713.24(3). Secondly, according to the *Erie Doctrine,* and other prevalent case law, state courts rarely possess exclusive jurisdiction that specifically bars federal courts from presiding over matters while sitting in diversity jurisdiction. Thirdly, Hardaway argues that the language of Florida Statute § 713.24 itself implies that the legislature drafted the statute with the specific intention of not creating exclusive jurisdiction for circuit courts. Based upon these arguments, Hardaway asks the court to deny Roberts & Schaefer's Motion to dismiss Count IV of the Hardaway Amended Counterclaim.

## Discussion

■ The district court in *Stel–Den of America, Inc. v. Roof Structures, Inc.,* 438 So.2d 882 (Fla. 4th DCA 1983) was asked to determine whether the appropriate court to file an action on a transfer bond was county court or circuit court. *Stel–Den,* 438 So.2d at 883. The *Stel–Den* court did not address the issue of whether or not Florida Statute § 713.24 excludes a federal court sitting with diversity jurisdiction from adjudicating a matter arising under the statute. The holding in *Stel–Den* only addressed the issue of whether or not a county court possessed proper jurisdiction to hear a matter concerning transfer bonds arising under Florida Statutes § 713.24. Therefore, *Stel–Den* is not persuasive on the issue of the exclusivity of subject matter jurisdiction for federal courts sitting with diversity jurisdiction in an action arising under Florida Statutes § 713.24.

Other circuits, however, have been presented with the question of whether or not a state legislature's grant of exclusive jurisdiction to a specific state court bars federal courts sitting in diversity jurisdiction from possessing subject matter jurisdiction and have not recognized a states' ability to excluded federal courts subject matter jurisdiction. *See Greyhound Lines, Inc. v. Lexington State Bank and Trust Co.,* 604 F.2d 1151 (8th Cir.1979); *Akin v. Louisiana National Bank of Baton Rouge,* 322 F.2d 749 (5th Cir.1963).

In *Greyhound,* the defendant (Lexington State Bank) moved to dismiss Greyhound's complaint because it was not filed in a county court as specifically required by state law. *Greyhound* 604 F.2d at 1154. The Eighth Circuit Court of Appeals went onto hold that "the decision of the Nebraska state legislature to place exclusive jurisdiction in county courts over claims against the estates of Nebraska decedents ... does not act as a restriction or abrogation of a federal court's diversity jurisdiction over such claims." *Id.*

The Fifth Circuit in *Akin* was also presented with a similar argument. *Akin,* 322 F.2d at 749. The Fifth Circuit went onto hold that federal jurisdiction cannot be defeated by a state statute which prescribes the

court in which the action is to be brought. *Id.* at 754. An examination of these two decisions clearly demonstrates other circuits' unwillingness to deny a federal court's jurisdictional authority simply because the matter is before the court by diversity jurisdiction.

Secondly, this matter appears before the Court by way of diversity jurisdiction. In accordance with the doctrine set forth in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when a federal court presides over a matter pursuant to diversity jurisdiction, that court must apply state substantive law. This doctrine is rooted in the basic premises that when a federal court sits in diversity jurisdiction, that federal court sits as if it were a state court and should reach the same result as would another state court. "A nonresident litigant in resorting to the federal diversity jurisdiction should obtain the same relief a resident litigant asserting the same cause of action would receive in the state courts." *Markham v. City of Newport News,* 292 F.2d 711, 718 (4th Cir.1961). Therefore, since the action against the transferred bonds set forth in Count IV of the Hardaway Amended Counterclaim is a valid state action, it is a valid claim in a federal court sitting in diversity jurisdiction. In addition, the Fourth Circuit in *Markham* went onto to hold that state laws cannot enlarge or restrict the jurisdiction of federal courts. *Id.*

However, Roberts & Schaefer correctly cite two situations where courts have excluded federal courts sitting in diversity jurisdiction from obtaining subject matter jurisdiction in place of certain state courts. *See Benning v. Board of Regents of Regency Universities,* 928 F.2d 775 (7th Cir.1991); and *Zeidner v. Wulforst,* 197 F.Supp. 23 (E.D.N.Y.1961). However, in each of these cases, the courts were specifically addressing the applicability of the Eleventh Amendment (providing states' immunity from suit in federal court unless state consents) to the *Erie Doctrine.* These courts cited to the Erie doctrine because the doctrine states that if a claim is not valid in a state court, then a federal court citing in diversity jurisdiction shall not have the authority to entertain the claim. *Erie Railroad Co. v. Tompkins,* 304

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, courts such as *Benning* and *Zeidner* held that where a state court had limited its tort liability pursuant to the Eleventh Amendment by providing the specific court in which a suit against a state may be brought, a federal court exercising diversity jurisdiction could not interfere. However, this exception is narrow. The general rule prevalent throughout the states is that states may not limit the diversity jurisdiction of a federal court. Furthermore, the exception to this rule is not recognized by all courts. *Markham v. City of Newport News,* 292 F.2d 711 (4th Cir.1961). In *Markham,* the court summarized this principle by stating that;

> [I]t would be quite foreign to the *Erie* Doctrine, ... to apply a state statute in such a way as to deny all relief in a federal court to a nonresident plaintiff on a cause of action which, clearly, the state courts would recognize and enforce. Erie requires that the federal court grant or withhold relief as the state courts would. It does not require relegation of the diversity jurisdiction to the mercies of the legislature of fifty separate states.

*Markham,* 292 F.2d at 718.

Even though there exist certain situations where federal courts sitting in diversity jurisdiction are excluded from possessing subject matter jurisdiction (probate law and certain Eleventh Amendment situations), these situations, or exceptions, are few and far between. These exceptions do not apply to the current situation presented to the Court with Florida Statute § 713.24.

Thirdly, there is language within Florida Statute § 713.24 itself which strongly suggests that the legislature never intended to create exclusivity in matters relating to transfer bonds. The statute reads in pertinent part that any party having an interest in a transfer bond "... *may* at any time and any number of times, file a complaint in chancery in the circuit court of the county where such security is deposited, *or* file a motion in a pending action to enforce a lien,...." FLA.STAT. § 713.24(3) (1995) (emphasis added). The legislature's use of the word *may* in the statute eliminates the presumption that a party seeking to enforce an

**252**

action on a transfer bond must file a complaint and maintain the action in circuit court. *See Brooks v. Anastasia Mosquito Control,* 148 So.2d 64, 66 (Fla. 1st DCA 1963) (holding that the term "may" when given its ordinary meaning denotes permissive term rather than the mandatory connotation of the word "shall"). Furthermore, the use of the word *or* in the statute implies that there is a choice between two alternatives when it appears in a permissive provision. *See Pompano Horse Club, Inc. v. State ex rel. Bryan,* 93 Fla. 415, 111 So. 801 (1927).

■ The legislature's use of the words "may" and "or" in combination with the plain language of the statute illustrates that the correct interpretation of the statute is that a party having an interest in the property from which a lien was transferred has two forms of relief; 1) filing a complaint in chancery with the circuit court where the property is located, or 2) by filing a motion in a pending action to enforce a lien. As a result of the statute's wording it becomes apparent that the legislature did not intend to create exclusive jurisdiction for circuit courts in matters arising under Florida Statute § 713.24.

### Conclusion

Therefore, upon consideration of the arguments set forth by both parties to this action, and based on the arguments presented above, this Court denies Roberts & Schaefer's Motion to Dismiss Count IV of the Amended Counterclaim or Alternatively, Motion for Judgement on the Pleadings.

IT IS THEREBY:

Ordered that the Motion to Dismiss Count IV of The Hardaway Company's Amended Counterclaim or Alternatively, Motion for Judgment on the Pleadings (Docket No. 72) be **denied.**